Argued May 18; affirmed June 2, 1943

McELWEE *v.* McELWEE

(138 P. (2d) 208)

Before BAILEY, Chief Justice, and ROSSMAN, LUSK, BRAND and HAY, Associate Justices.

*Ralph H. Campbell,* of Salem, for appellant.

*Mark V. Weatherford,* of Albany (Weatherford & Thompson, of Albany, on the brief) for respondent.

This is a suit for divorce brought by Pansy McElwee against William E. McElwee, her husband. From a decree in accordance with the prayer of the complaint the defendant appeals.

After the usual allegations of marriage and residence, the plaintiff alleges that the defendant has been guilty of cruel and inhuman treatment and personal indignities rendering her life burdensome. The allegations may be summarized in general terms as follows: That the defendant adopted a domineering and argumentative attitude; that without provocation he has persisted in criticizing plaintiff's conduct and arguing with her about trivial matters; that for several years he has been extremely irritable; that he has failed to contribute to her support; that when informed that plaintiff contemplated filing a suit for divorce he threatened plaintiff with violence and threatened to shoot her; that he also threatened to ''blacken her name in Albany so it would be impossible for plaintiff to sell her property in Albany'' and that

he did so; that in the month of October, 1940, he wrote a letter to another woman "and proposed to said woman that she make payments on some property that plaintiff and defendant were purchasing so that defendant and said other woman would have a place to live in the future"; that the conduct of the defendant has had a detrimental effect on the health of the plaintiff.

The answer consists merely of a general denial of all the allegations relating to cruel and inhuman treatment.

BRAND, J. No good purpose will be served by a review in detail of the evidence. It is sufficient to say that the testimony of the plaintiff is to the effect that the defendant over a long period of years pursued a consistent and persistent course of criticism and complaint directed against the plaintiff which "was constant until it got to be literal persecution." She testified in substance that the defendant told her that he hated her, that he was sick of the match and advised her to get a divorce if she wanted it. Plaintiff's testimony further discloses that she inherited from her father some real property in or near Albany and was engaged in subdividing it and selling it in lots and that it was only after these facts came to the knowledge of the defendant that he commenced to object to the proposed divorce. She testified further that the defendant threatened that if she commenced divorce proceedings he would blacken her name so that she would be unable to stay in Albany and carry on the sale of her property. Her testimony in this respect is corroborated at least to this extent: Two witnesses testified that the defendant did inform them in general terms that the plaintiff had had improper

relations with another man. The incident to which defendant referred appears to have occurred eight or nine years prior to the trial. We are left completely in doubt as to the extent of her alleged misconduct at that time, but the evidence discloses that whatever that conduct was it had been fully condoned by the defendant. In one of the defendant's undated letters which was apparently written shortly before the trial, the defendant wrote:

"Aperantly you have forgoten that I still have the dictaphone records of you and your boy friend, at Portland after I had wired our home, unbeknown to you at that time, and while I watched you both and took the recording of your actions. * * * The court will hear, what these records, will reproduce, with what I saw at that time."

The letter is signed "With Love, Billie." The total failure to introduce any of the threatened evidence casts some doubt upon defendant's assertion that he had it. In fact, the defendant's testimony is almost exclusively confined to the denial of charges made against him by the plaintiff. Under date of July 2nd, 1941, the defendant wrote:

"If I land in Salem, the law will make you pay for me, there, and I would not like that either. There is a breaking point soon and I know it can be forstalled, if you will try and coperate and be broadminded and forgive and forget, the past like I am willing to do. Please write to me before I turn savage. If I turn savage, your future and reputation will not be any good in Oregon nor mine either. * * *

"Some times I can see good other times I cannot see very far, at all. I can shoot straight yet."

Defendant's own letters disclose that he is of a highly nervous and unstable character; that he always car-

ried a gun and that the plaintiff was genuinely afraid of him.

The testimony discloses at least a strong inference that defendant was more interested in securing a favorable property settlement than in retaining his wife. Plaintiff testified that the defendant asked her upon one occasion how much money she would give him if he would let her have a divorce. The defendant had executed a power of attorney in favor of the plaintiff authorizing her to act for him in connection with the real property transactions. This he revoked at the time of the filing of the complaint. His testimony concerning this matter was as follows:

"Q You realize you are holding up the sale of her property?

"A Yes, sir.

"Q And you are doing it for that purpose?

"A Till we get a settlement or Mrs. McElwee comes back to me."

■■■ The defendant appears to rely chiefly on the doctrine of recrimination and contends that the parties were equally at fault.

"Strictly, recrimination is an affirmative defense which must be specially pleaded or set up in the answer as a defense in order that the defendant may have the right to give proof of such defense." 17 Am. Jur., p. 314, § 325.

Notwithstanding the rule as stated above, it is true that equity applies the doctrine of clean hands and may refuse a divorce to the plaintiff where the evidence discloses that she is equally at fault, notwithstanding the absence of any affirmative plea, but in this case there is an absence of both pleading and proof. The defendant introduced in evidence numerous letters

of the plaintiff, some of which disclosed a conscious-ness on her part that she was not without fault in connection with the bickering and innumerable quarrels in which the parties had participated. However, we are of the opinion from the entire record that the conduct of the defendant was out of all proportion to any provocation on the part of the plaintiff. The parties had been separated for more than a year at the time of the trial. We think there is no prospect that they would ever become reconciled even if we should refuse to sever the bonds of matrimony. There are no children the issue of the marriage, no alimony is sought, no property rights are involved under the pleadings. What was said by this court in an earlier case is applicable here:

> "As to the marital relation existing between husband and wife in this instance, the evidence is very clear that the plaintiff is not *in pari delicto* with the defendant in offending against that rela-tion. On this point it is well said in 21 C. J. 189:
>
> " 'The maxim being one founded on public policy, public policy may require its relaxation. Even when the parties have been found to be *in pari delicto,* relief has at times been awarded on the ground that in the particular case public policy has been found to be best conserved by that course.' " * * *
>
> "We are not concerned with either property or children in this suit. No issue is presented in that respect. The state is not interested in perpetuating such a marriage as is here revealed, and no good reason exists why it should not be dissolved."
> *Condit v. Condit,* 115 Or. 481, at pp. 482, 483, 237 P. 360.

Although the court can dissolve the marriage contract only upon proof of some statutory ground of divorce, and although the cruelty constituting a ground for

divorce must be unmerited and unprovoked, unless it is unjustified by the provocation and out of proportion to the offense (*Douglas v. Douglas,* 163 Or. 689, 99 P. (2d) 479) the fact remains that the interest of the state as well as that of the parties is relevant to the issues involved.

> "No good could come from keeping these people bound by a contract, the substance of which has been destroyed and there is nothing left but a shadow. * * * The family is broken up and a continuation of the contract will not keep them together." *Heisler v. Heisler,* 152 Or. 691, at p. 695, 55 P. (2d) 727.

■ We find that the defendant has been guilty of cruel and inhuman treatment and that he has subjected the plaintiff to personal indignities in fact rendering her life burdensome. We find further that plaintiff is not *in pari delicto.* An experienced trial judge heard the testimony and considered the plaintiff entitled to a decree. That decree is affirmed with costs to the plaintiff.