Submitted on record and briefs February 28, reversed and remanded May 1, 1985

## McKINLEY,
*Appellant,*

*v.*

## WEIDNER,
*Respondent.*

(A8309-06086; CA A34067)

698 P2d 983

John D. Ryan, Portland, filed the briefs for appellant. On the briefs was Frank M. Ierulli, Portland.

Gerald R. Pullen, Portland, filed the brief for respondent.

Before Richardson, Presiding Judge, and Gillette and Warden, Judges.

GILLETTE, J.

## GILLETTE, P. J.

Plaintiff brought this action to recover damages resulting from the alleged negligence of defendant, an attorney. The complaint alleged that, following defendant's advice, plaintiff tendered and subsequently dishonored a check in a ploy to recover possession of a boat from a third party. Ultimately, the third party was granted summary judgment in a separate proceeding for amounts due, plus costs and interest, and foreclosed on the boat to satisfy the judgment. Plaintiff's action was dismissed by the trial court on a motion alleging that he had "unclean hands" as a result of his having tendered a check with the intent to dishonor it. On appeal, he assigns as error the trial court's use of the "clean hands" doctrine as a bar to his action for money damages. We reverse.

Generally, the "clean hands" doctrine is referred to as an equitable maxim. In *Rise v. Steckel,* 59 Or App 675, 681, 652 P2d 364 (1982), this court described it as a maxim that

> " ' "*is based on conscience and good faith. It is not strictly or primarily a matter of defense, but is invoked on grounds of public policy and for the protection of the integrity of the court.*" ' " *Quoting Taylor et ux v. Grant et al,* 204 Or 10, 24, 279 P2d 479, 279 P2d 1037, 281 P2d 704 (1955). (Emphasis in original.)

Our decision in *Rise* relied, *inter alia,* on our earlier decision in *Gratreak v. North Pacific Lumber Co.,* 45 Or App 571, 609 P2d 375, *rev den* 289 Or 373 (1980). In *Gratreak,* the plaintiff, a former employe of the defendant, brought an action for malicious interference with the plaintiff's contractual relations with his new employer. In addition to a general denial, the defendant alleged three affirmative defenses. By way of reply, the plaintiff asserted that enforcement of any of the three defenses should be barred "because of defendant's *unclean hands.*" 45 Or App at 571. (Emphasis in original.) We said:

> "The plaintiff by his reply seeks to deny the defendants equitable relief because they do not have clean hands. The trouble is that the defendants are not requesting the intervention of a court of equity. The plaintiff chose the forum—the complaint alleges an action at law. The defendants' answer pleads a legal defense * * *.

"The plaintiff acknowledges that the complaint and the answer are on the law side of the court, but contends that the clean hands doctrine is an 'equitable defense' and therefore can be pleaded as a defense to a law action * * *.

"Clean hands in the context of this case is not an equitable defense. Rather, it is a doctrine, maxim or principle of equity which may be invoked to deny the opposing party the right to come into a court of equity. 2 Pomeroy's Equity Jurisprudence § 359 at 5 (5th ed 1941) * * *.

"In this case the plaintiff by its reply could not invoke the doctrine of clean hands to prevent the defendants from pleading and claiming under a legal defense * * *." 45 Or App at 575.

All of the foregoing would have been fine, had this court not then decided *Kirkland v. Mannis,* 55 Or App 613, 639 P2d 671, *rev den* 292 Or 863 (1982). In *Kirkland,* the plaintiff, a prisoner, brought a malpractice action against the defendant, an attorney, alleging, *inter alia,* that the defendant

"unethically, wantonly and with the intent to defraud the plaintiff and the court * * * manufactured a story for the plaintiff's defense to [criminal charges] * * *."

The trial court had granted the defendant judgment as to the foregoing allegation. We affirmed, stating:

"[W]e agree with the trial judge that no cause of action is stated. The essence of this paragraph is that plaintiff and defendant cooperatively presented a perjurious tale at plaintiff's criminal trial, and the tale did not sell. *Because of his acknowledged perjury, plaintiff brings his complaint with unclean hands and may not recover. North Pacific Lumber Co. v. Oliver,* 286 Or 639, 596 P2d 931 (1979); *Thompson v. Sprint,* 247 Or 484, 430 P2d 1014 (1967)." (Emphasis supplied.)

The emphasized statement in *Kirkland* was wrong. The claim was a legal one; the equitable doctrine did not apply, as we had earlier explained in *Gratreak.*[1] The only argument that would conceivably square *Gratreak* and *Kirkland* is that the adoption of the Oregon Rules of Civil Procedure abolished many of the distinctions between law and equity and should, therefore, be deemed impliedly to extend the availability of the clean hands doctrine to law actions.

---

[1] Both the cases we relied on in our disposition of the *Kirkland* case were equity proceedings.

We do not think that view can be sustained. ORCP 2 removed only procedural distinctions between law and equity, not substantive differences. Under code pleading systems that have eliminated distinctions between law and equity, one authority has noted that such an elimination of procedural distinctions has not

> "obliterated the essential and inherent distinctions between law and equity as two separate sciences. What was an action at law before the code, is still an action founded on legal principles; and what was a bill in equity before the code, is still a civil action founded on principles of equity." 1 Sutherland *Code Pleading,* § 87 at 71 (1910).

We conclude that *Kirkland's* substantive application of the equitable doctrine of clean hands to an action at law was technically incorrect.

While technically incorrect, however, the public policy considerations in *Kirkland,* are certainly of importance to actions at law as well as proceedings in equity. As defendant puts it in his brief, "[w]hether we give plaintiff's conduct the nomenclature of 'clean hands', contributory negligence as a matter of law, or simply a violation of public policy, the courts should not entertain claims based upon such anti-social conduct."

*Kirkland* was right in substance. The proper nomenclature, however, is that the parties were *in pari delicto, i.e.,* "[i]n equal fault; in a similar offense or crime; equal in guilt or in legal fault." *Black's Law Dictionary* 1270 (4th Ed Rev 1968). That the parties are *in pari delicto* is often asserted in contract disputes and claims for indemnity. *See, e.g., Johnson Lbr. Corp. v. Leonard, et al,* 192 Or 639, 236 P2d 926 (1951); *Oregon & Western Col. Co. v. Johnson,* 164 Or 517, 102 P2d 928 (1940). It has also been applied in negligence actions. *See McGlees Admir. v. Elcomb Coal,* 288 Ky 540, 156 SW2d 868 (1941).

*In pari delicto* has been referred to as a "companion principle" to the equitable maxim of clean hands, to be applied in actions at law where equitable doctrines are irrelevant. *Tarasi v. Pittsburg Nat. Bk.,* 555 F2d 1152 (3rd Cir), *cert denied* 434 US 965 (1977); *Furman v. Furman, et al,* 178 Misc 582, 34 NYS 2d 699 (1941) ("[T]he doctrine of 'clean hands' is

closely akin to the maxim *in pari delicto,* and the two are sometimes discussed as though involving substantially the same principle") *quoting Heflinger v. Heflinger,* 136 Va 289, 291, 118 SE2d 316, 318 (1923)). The *Tarasi* court held that, when parties are *in pari delicto,* recovery may be barred if a litigant's "losses are substantially caused by activities the law forbade him to engage in." 555 F2d at 1156-57.

Similarly, in *Goldberg v. Sanglier,* 96 Wash 2d 874, 883, 639 P2d 1347 (1982), after a finding that the parties were *in pari delicto,* public policy considerations were the basis of the court's decision. *Goldberg* stressed the importance of deterring future misconduct in its discussion of the policy underlying the doctrine of *in pari delicto,* but it also held that the defense was inappropriate where the parties were not equally culpable or "[w]here the conduct of the party who seeks to enlist support of the doctrine outrages public sensibilities more than the conduct of the party against whom the doctrine is sought to be applied * * *." 96 Wash 2d at 883.

Oregon has also recognized the public policy orientation of the doctrine. In *McElwee v. McElwee,* 171 Or 462, 138 P2d 208 (1943), the court said:

"The maxim being one founded on public policy, public policy may require its relaxation. Even when the parties have been found to be *in pari delicto,* relief has at times been awarded on the ground that in the particular case public policy has been found to be best conserved by that course." 171 Or at 467, *quoting Condit v. Condit,* 115 Or 481, 482-83, 237 P 360 (1925).

We understand from the foregoing that the rule is this: The doctrine of *in pari delicto* may—but not need—be applied to prevent recovery in a law action, when the party against whom it is to be applied is as culpable as, or more culpable than, his opponent. The question then becomes whether, on the state of the record the trial court had before it in this case, it could be established that plaintiff was equally culpable with, or more culpable than, defendant.

We think not. As the allegation now stands, plaintiff claims that he undertook a particular course of conduct relying on the expertise of defendant. His allegation shows that he acted wrongfully, but it does not establish a parity of fault. Defendant is an attorney—a presumed expert in the

law; plaintiff is not. Evidence could be presented under this complaint to show that defendant was in the superior position to appreciate the wrongfulness of plaintiff's actions and that his culpability is, therefore, greater. *See Lane v. Gugsell,* 113 Ind App 676, 47 NE2d 835 (1943). The policy reasons behind the doctrine of *in pari delicto* do not justify dismissal of plaintiff's complaint.

Reversed and remanded.