No. 86-512

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

_____

THOMAS G. WALLER and LINDA L.
WALLER,

         Plaintiffs and Appellants,

   -vs-

DONALD ENGELKE, individually; CHARLES
ENGELKE, individually; CHARLES ENGELKE
and DONALD ENGELKE, doing business as
CHARLES AND DON ENGELKE, a partnership,

        Defendants and Respondents.

_____

APPEAL FROM:  District Court of the Fifteenth Judicial District,
            In and for the County of Roosevelt,
            THe Honorable M. James Sorte, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        David L. Irving, Glasgow, Montana
        David S. Evinger argued; Robins, Zelle, Larson and
        Kaplan, Minneapolis, Minnesota

    For Respondent:

        Loren J. O'Toole; O'Toole & Hunt, Plentywood, Montana
        Thomas M. Monaghan argued; Lucas & Monaghan, Miles City,
        Montana

_____

Submitted:  May 28, 1987

Decided:  July 27, 1987

Filed: JUL 27 1987

*Ethel M. Harrison*

Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Plaintiffs Tom and Linda Waller brought suit in the Fifteenth Judicial District, Roosevelt County, against Donald Engelke and his father, Charles Engelke, both individually and as a partnership, to recover damages for injuries suffered by Tom Waller while he was a passenger in a plane which crashed while piloted by Donald Engelke. The District Court granted the summary judgment motions of Donald Engelke and Charles Engelke. The Wallers appealed both summary judgment orders. We affirm in part, reverse in part and remand for appropriate proceedings.

The issues are:

1. Did the District Court err in granting summary judgment to Charles Engelke?

2. Did the District Court err in granting summary judgment to Donald Engelke?

On January 5, 1984, Donald Engelke was the pilot and Tom Waller the passenger in a Cessna 152 airplane. The District Court found that they were flying at an altitude of 300 or 400 feet and were looking for and hunting coyotes when the airplane stalled and crashed. Donald Engelke and Tom Waller were both seriously injured in the crash. Donald Engelke did not have his private pilot's license, although he did have his student permit.

The National Transportation Safety Board (NTSB) found that the probable causes of the accident were: (1) improper airspeed maintained by the pilot; and (2) improper use of the aircraft and inadequate initial training by the pilot. The NTSB found that factors relating to the accident were: (1) inadequate preflight preparation; (2) excessive aircraft weight and balance loads; and (3) improper altitude.

2

The District Court found that the hunting was not related to a farming partnership between Charles Engelke and Donald, his son, and granted Charles Engelke's motion for summary judgment, stating:

> In order to impose liability on Charles Engelke, the plaintiffs would have to show that the alleged negligence of Donald Engelke took place in the ordinary course of the business of the alleged partnership between Donald and Charles Engelke or that the wrongful act or omission of Donald Engelke was performed with the authority of Charles Engelke. (Section 35-10-305, MCA.) The plaintiffs offered no proof that the hunting of coyotes was in any way related to the alleged farming partnership of Donald and Charles Engelke. The plaintiffs offered no proof that Charles Engelke had ever given Donald Engelke authority to fly the airplane on behalf of the partnership on hunting trips.
> Thus, the Court is unable to find any evidence which would support either of the two conditions which would impose liability on Charles Engelke for the alleged negligence of Donald Engelke.

The District Court also granted Donald Engelke's motion for summary judgment. It concluded that the accident happened while Donald Engelke and Tom Waller were engaged in an illegal activity of hunting coyotes from an airplane and thus were in pari delicto. The Wallers appealed both summary judgment orders.

I

Did the District Court err in granting summary judgment to Charles Engelke?

Section 35-10-305, MCA, regarding partnership liability, provides:

> Where, by any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership or with the authority of his copartners, loss or injury is caused to any person not being a partner in the partnership or

3

any penalty is incurred, the partnership is liable therefor to the same extent as the partner so acting or omitting to act.

Section 35-10-304, MCA, regarding partnership knowledge or notice, provides:

Notice to any partner of any matter relating to partnership affairs and the knowledge of the partner acting in the particular matter, acquired while a partner or then present to his mind, and the knowledge of any other partner who reasonably could and should have communicated it to the acting partner operate as notice to or knowledge of the partnership, except in the case of a fraud on the partnership committed by or with the consent of that partner.

The issue is whether there is any evidence that Donald Engelke's flight activities were performed in the ordinary course of any partnership between Donald and his father Charles, or whether the flights were performed with the authority of Charles Engelke. The Wallers contend that there are genuine issues of material facts on both of these questions.

First, the Wallers assert that Donald Engelke and Charles Engelke were partners in a farming operation and that the flight activities on the date of the accident took place in the ordinary course of the farming partnership. In support of that theory, the Wallers contend: (1) that seed crop, a partnership asset, was used in part as collateral for the purchase of the plane; (2) that the plane was listed by Donald Engelke as an expense of his farming operation; (3) that on at least one occasion Donald Engelke used the plane to pick up parts for crop spraying; and (4) that one purpose of the flight on the day of the accident was to check out the farming operation. We conclude that the plaintiffs have failed to establish that the flight took place in the

4

ordinary course of any farming partnership between Donald and Charles Engelke.

The depositions and affidavits show that Tom Waller took his shotgun and shotgun shells with him on the plane and that both Tom Waller and Donald Engelke were hunting at the time of the crash. The flight occurred in early January when farming was not taking place on the Engelke farm. The Wallers failed to show that either Tom Waller or Donald Engelke were checking on any aspect of the farming operation. The depositions show that Tom Waller and Donald Engelke intended to hunt something of value on the date of the accident. The flight pattern and altitude of 300 to 400 feet is consistent with hunting. The Wallers failed to rebut the deposition testimony that Tom Waller had not been asked by anyone to check out the farming operations of either Donald or Charles Engelke.

Furthermore, the depositions of both Tom Waller and Donald Engelke establish that the crash took place on land owned by Melvin Nelson. At the time of the crash they could not have been checking any farming operation of either Donald or Charles Engelke. The depositions and affidavits establish without contradiction that Tom Waller and Donald Engelke were hunting from the airplane on the day of the accident and were not engaged in a farming operation. The Wallers have failed to establish an issue of material fact.

In addition, the Wallers have failed to establish that the flight activities on the date of the accident were performed with the authority of Charles Engelke. The Wallers contend that § 35-10-305, MCA, provides that a partner can authorize an action by implicit as well as explicit means; and argue that Charles must have known about Donald's use of the plane in the farming operation and therefore he must have authorized such usage. However, the uncontradicted

5

deposition testimony submitted by the defendants established that Charles Engelke did not authorize anyone, either explicitly or implicitly, to check out the farming operation by air.

Charles Engelke, Donald Engelke, and Delores Engelke, Charles' wife, all testified by deposition that the plane was purchased by Donald for his own use. The Wallers failed to establish any connection between the flight at the time of the crash and Charles Engelke. The hunting of coyotes from the plane was not connected to the alleged farming partnership of Donald and Charles Engelke. The fact that Donald Engelke owned and piloted the plane in which Tom Waller was hunting in no way has been connected to Charles Engelke. Simply put, Charles Engelke had no connection to the events which led to the claimed injury of plaintiffs.

In summary, the plaintiffs have failed to establish that the alleged negligence of Donald Engelke took place in the ordinary course of the alleged farming partnership between Donald and Charles Engelke, or that the alleged negligence was performed with the authority of Charles Engelke. The District Court's summary judgment order as to Charles Engelke is affirmed.

## II

Did the District Court err in granting summary judgment to Donald Engelke?

The District Court concluded that the airplane accident occurred while Donald Engelke and Thomas Waller were engaged in the illegal activity of hunting coyotes from an airplane without a proper permit. We note that in general no game birds, game, or fur-bearing animals may be killed, taken or shot at from any type of aircraft. Section 87-3-126, MCA. However, predatory animals that prey upon livestock, specifically including coyotes and lynx, may be hunted from the air

6

if Department of Livestock regulations are followed. See §
81-7-101, MCA, and following sections. Under A.R.M. §§
32.22.101 to 32.22.106, permits to hunt predatory animals
from the air will be issued only to Montana-domiciled li-
censed pilots with at least 200 total flying hours whose
aircrafts meet federal and Montana aeronautical requirements.

The court granted Donald Engelke's motion for summary
judgment based upon the in pari delicto doctrine. We agree
with the court's conclusion that the accident occurred while
Donald Engelke and Thomas Waller were engaged in an illegal
activity. The record clearly demonstrates that Donald
Engelke and Thomas Waller were hunting coyotes from the
airplane moments before the crash. However, we disagree with
the court that the in pari delicto doctrine bars this lawsuit
as to Donald Engelke.

The in pari delicto doctrine, found at § 1-3-215, MCA,
provides:

> Between those who are equally in the right or
> equally in the wrong, the law does not interpose.

The Montana statute was originally enacted in 1895. The
statute is not clear in its wording. What is meant by "those
who are equally in the right?" The cases which we have
examined have not applied a theory to people equally in the
right so that we are unable to state what was intended by
that phrase. In a similar way, what does "equally in the
wrong" mean? In interpreting this doctrine, the courts of
other states have not required the trial court to analyze the
evidence and determine if in fact there is an equality in
wrongdoing similar to the comparisons required under our
comparative negligence law in Montana. Instead, the courts
have indicated that if the conduct is grievously wrong from a
moral or criminal standpoint, the law will deem the parties

7

to be equally in the wrong and not allow one wrongdoer to sue the other. We further point out that the statute does not establish whether the wrong mentioned includes wrongfully engaging in, as an example, negligent action, or is to be limited to some form of criminal conduct. If it is limited to criminal conduct, there is no suggestion of the nature of the wrongdoing which is sufficient to come under the statute. In the absence of clear statutory guidance, we are required to look to case law to establish the nature of the in pari delicto doctrine.

The doctrine long has been recognized in both English and American jurisprudence. Washington Gaslight Co. v. District of Columbia (1896), 161 U.S. 316, 16 S.Ct. 564, 40 L.Ed. 712, contains a good discussion of the in pari delicto doctrine. This case involved a personal injury claim by a woman who stepped into an open box placed in the city sidewalk by the gas light company. After recovery by the woman from the District of Columbia, the District attempted to recover from the gas company. The company contended that both the District and the company had a legal obligation to keep the sidewalk free of the hazard of an open box, and that as a result the District and company were in pari delicto, barring recovery by the District. The U. S. Supreme Court concluded that the doctrine did not bar recovery between the company and the District, and stated:

> The principle thus announced qualifies and restrains within just limits the rigor of the rule which forbids recourse between wrongdoers. In the leading case of Lowell v. Railroad, 23 Pick. 24, 32, the doctrine was thus stated:
> "Our law, however, does not in every case disallow an action by one wrongdoer against another to recover damages incurred in consequence of their joint offense. The rule is, 'In pari delicto,

8

> potior est conditio defendentis.' If the parties
> are not equally criminal, the principal delinquent
> may be held responsible to his codelinquent for
> damages incurred by their joint offense. In re-
> spect to offenses in which is involved any moral
> delinquency or turpitude, all parties are deemed
> equally guilty, and courts will not inquire into
> their relative guilt. But where the offense is
> merely malum prohibitum, and is in no respect
> immoral, it is not against the policy of the law to
> inquire into the relative delinquency of the par-
> ties, and to administer justice between them,
> although both parties are wrongdoers.

Washington Gaslight Co. v. District of Columbia (1896), 161 U.S. 316, 327-28, 16 S.Ct. 564, 568, 40 L.Ed. 712, 718-19.

This case points out that the in pari delicto doctrine generally forbids recourse between wrongdoers but also points out that the doctrine does not apply to every case of wrongdoing. The Court emphasized that in respect to offenses which involved moral delinquency or turpitude, all parties were deemed equally guilty and the Court would not inquire into their relative guilt. While we agree with the theory, we do not choose to adopt the terminology of moral delinquency or turpitude. Instead we conclude that where offenses have involved criminal conduct or delinquency of which the law strongly disapproves as a matter of public policy, the parties are to be deemed equally guilty and the courts will not inquire further into their relative guilt. Following the guidance of Washington Gaslight Co., we further conclude that conduct prohibited by law which is not strongly condemned by public policy as a matter of serious criminal conduct or delinquency, may not be sufficient to bar recovery; and that in such a case, it is appropriate for the law to inquire into the relative delinquency of the parties and to administer justice between them.

9

In a similar manner, courts from Washington and Oregon have recently been faced with negligence cases where the parties were allegedly in pari delicto, and in both cases the courts allowed the lawsuit to continue for public policy reasons.   In McKinley v. Weidner (Or. 1985), 698 P.2d 983, a client brought a negligence action against his attorney, alleging the attorney told him to tender and then dishonor a check in a ploy to recover a boat from a third party.   The Oregon Court of Appeals reversed the lower court's decision that the suit was barred and discussed the in pari delicto doctrine:

> Oregon has also recognized the public policy orientation of the doctrine.   In McElwee v. McElwee, 171 Or. 462, 138 P.2d 210 (1943), the court said:
> 'The maxim being one founded on public policy, public policy may require its relaxation. Even when the parties have been found to be in pari delicto, relief has at times been awarded on the ground that in the particular case public policy has been found to be best conserved by that course.'   171 Or. at 467, 138 P.2d 208, quoting Condit v. Condit, 115 Or. 481, 482-83, 237 P.360 (1925).

McKinley, 698 P.2d at 986.

Likewise, in Goldberg v. Sanglier (Wash. 1982), 639 P.2d 1347, the Washington Supreme Court reversed the lower court's decision that the case was barred and reinstated the trial court's judgment.   After an extensive discussion of the in pari delicto doctrine, the Washington Court held that the suit was not barred because "[p]ublic policy is better served by upholding the trial court in this case."   Goldberg, 639 P.2d at 1355.   On the issue of the barring of a lawsuit by the in pari delicto doctrine, the Goldberg court stated:

10

> Where the conduct of the party who seeks to enlist support of the doctrine outrages public sensibilities more than the conduct of the party against whom the doctrine is sought to be applied, courts will not support application of the rule.
>
> . . .
>
> Ultimately, a decision as to whether a party is in pari delicto relies on public policy considerations and not a neat calculus for determining differential fault. The fundamental concern that should guide a court in making its decision is whether the 'public good [will be] enhanced.' (Cite omitted.)

Goldberg, 639 P.2d at 1353.

We agree with the holding of the Washington Court that if the conduct outrages public sensibilities, then the doctrine may properly be applied. In general we also agree with the theory that the fundamental concern should be whether the public good will be enhanced. However, we prefer not to use those terms because of difficulty in defining what public good was intended to mean.

For the assistance of the trial court, we will attempt to point out the broad parameters of the in pari delicto doctrine. We do so by the use of two examples. In the first example we assume that in the course of a bank robbery, one bank robber fires his gun and injures the other bank robber. May the injured bank robber sue the other bank robber for that negligent conduct in shooting him? Clearly the public policy aimed at the elimination of bank robbery outweighs the policy of allowing one person to sue another for personal injury. In that circumstance we would conclude that both robbers would be deemed equally responsible and the courts would not inquire into their relative guilt and would not allow recovery for personal injury. Our second example is at the other extreme. We assume two trucks are involved in a collision in which one driver was clearly negligent and the

11

other driver was absent any fault. We further assume that one axle on each truck carried a load of 20,100 pounds which is 100 pounds over the allowable gross weight on one axle under § 61-10-107, MCA. Would the equal wrong here in violating the maximum gross weight statute bar recovery by the non-negligent truck driver? In this example we would conclude that no significant public policy would be offended in allowing recovery and would therefore allow recovery by the non-negligent truck driver from the negligent truck driver. The in pari delicto doctrine would not be applicable in that factual circumstance.

We now consider the case before us. Our Montana statutes do allow hunting of coyotes from an airplane, but place limitations upon the right to hunt. The statutes limit the places and condition where hunting may take place from an airplane and especially require qualified flight training by the pilot so that the hunting may be done in safety and also in consistency with Montana wildlife goals. Here the defendant Donald Engelke did not have the required flight training and he had not made any application for a license. The hunting statute is not aimed at correcting serious criminal conduct comparable to armed robbery, homicide or other serious felonies. While there is a public policy of requiring a license before hunting from an airplane may be allowed, the public policy of Montana also gives the right to recover for injuries caused by the negligence of another party. We are required to compare or balance these public policies. We conclude that the hunting statute is not of a type involving criminal conduct or delinquency of which the law so strongly disapproves as a matter of public policy that access to the courts should be denied for tort purposes. We conclude that the in pari delicto doctrine should not be applied to bar a continuation of the present tort action.

In light of this decision, we conclude that we must overrule two prior Montana cases which relied on the in pari delicto doctrine to bar lawsuits. In Melville v. Butte-Balaklava Copper Co. (1913), 47 Mont. 1, 130 Pac. 441, an action to recover damages for the death of Michael Melville was brought by his widow and minor children. Mr. Melville's death was alleged to have been caused by the wrongful act of the defendant. The Court affirmed the lower court's judgment for the defendant, citing the in pari delic-to doctrine, because Mr. Melville had worked in the defendant's mine for more than eight continuous hours in violation of Montana law. The Court noted that the eight-hour law could be broken by both the employee and employer if the employee worked more than eight hours and that violation of the law was a misdemeanor.

In Jackson v. Lomas (1921), 60 Mont. 8, 198 Pac. 434, a minor, bought firecrackers from the defendant, a Butte businessman. A Butte ordinance prohibited the sale and discharge of fireworks within the city limits. The plaintiff injured himself when he discharged the fireworks and sued the defendant. The Court reversed the $1200 jury verdict based upon the in pari delicto doctrine because both the plaintiff and defendant had violated the city fireworks ordinance.

Although these two cases involved death or serious injury, tort recovery was barred based upon the in pari delicto doctrine. In Melville, the conduct which barred recovery of the miner's widow was Mr. Melville's working in excess of eight continuous hours. Today we view the eight hour law responsibility as resting primarily on the shoulders of the employer, and consider the obligation of the employer in that regard as being very significant as a matter of public policy. However, we do not conclude there is a similar public policy which attaches to the breach of law by the

13

employee, as we recognize the extreme compulsion which normally rests upon the employee to comply with such requirements on the part of his employer. We therefore conclude that the conduct of Mr. Melville in working beyond the eight hours is not conduct of which the law strongly disapproves as a matter of public policy.

In a similar manner, in Jackson, the child had purchased fireworks in violation of the law and the court concluded that recovery for his injuries was therefore barred. Again we distinguish between the conduct of the adult seller of fireworks and the minor purchaser of the same. We conclude that the conduct on the part of the child in purchasing the fireworks is not conduct of which the law strongly disapproves as a matter of public policy.

In both Melville and Jackson we conclude that the conduct involving the plaintiff would today not be strongly condemned by public policy as a matter of serious delinquency or criminal conduct. We are required to balance the public policy in each case with regard to the prohibition of an employee working more than eight hours and the purchase of fireworks by a minor against the public policy of allowing the injured persons the right to recovery for injuries caused by the negligence of the other parties. In making this balance we today conclude that the in pari delicto doctrine would not bar recovery. We specifically overrule Melville v. Butte-Balaklava Copper Co. (1913), 47 Mont 1, 130 Pac. 441, and Jackson v. Lomas (1921), 60 Mont. 8, 198 Pac. 434. We emphasize that these cases further assist in establishing the parameters of the in pari delicto doctrine.

We note that Kallio v. Northwestern Improvement Co. (1913), 47 Mont. 314, 132 Pac. 419, and Lencioni v. Long (1961), 139 Mont. 135, 361 P.2d 445, also involved the in pari delicto doctrine. Because these cases are more

14

difficult to analyze, we do not choose to overrule them at this time. We prefer to allow the boundaries of the in pari delicto doctrine to be developed by future cases which come before us.

We affirm the District Court as to Charles Engelke, reverse the District Court as to Donald Engelke, and remand for further proceedings consistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

District Judge Leonard Langen
sitting for Justice Frank B. Morrison, Jr.

_____
Judge

15