**GENERAL CAR & TRUCK LEASING SYSTEM, INC., Appellant,**

v.

**LANE & WATERMAN, Appellee.**

No. 95–898.

Supreme Court of Iowa.

Dec. 18, 1996.

Rehearing Denied Jan. 23, 1997.

W. Ward Reynoldson of Reynoldson, Van Werden, Kimes, Reynoldson, Lloyd & Cheers, L.L.P., Osceola, Michael T. Hannafan and Cory A. Johnson of Michael T. Hannafan & Associates, Ltd., Chicago, Illinois, and G. Trent Marquis of Klockau, McCarthy, Ellison & Marquis, Rock Island, Illinois, for appellant.

H. Richard Smith and David Swinton of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, P.C., Des Moines, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, NEUMAN, ANDRÉASEN, and TERNUS, JJ.

TERNUS, Justice.

Plaintiff, General Car & Truck Leasing System, Inc., sought the assistance of defendant, Lane & Waterman, in applying for and renewing the registration of its service mark. This registration was later canceled due to misrepresentations made in supporting affidavits signed by General Car officers. General Car brought this legal malpractice action to recover consequential damages, claiming the untrue statements in the affidavits were made at the direction of Lane & Waterman. The district court granted Lane & Waterman's motion for summary judgment, relying on two defenses: (1) General Car's action was not filed within the applicable statute of limitations; and (2) General Car's misrepresentations invoked the doctrine of in pari delicto, thereby barring recovery by General Car. These issues are before us on General Car's appeal, together with two discovery rulings involving the production of attorney/client materials. Because we conclude General Car and Lane & Waterman acted in pari delicto in perpetrating a fraud on the Patent and Trademark Office, we affirm.

## I. Scope of Review.

We review a summary judgment ruling for error. *Gerst v. Marshall,* 549 N.W.2d 810, 811 (Iowa 1996). The district court correctly enters summary judgment when the record shows "no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Iowa R. Civ. P. 237(c). Thus, on review, we examine the record before the district court to decide whether any material fact is in dispute, and if not, whether the district court correctly applied the law. *Benavides v. J.C. Penney Life Ins. Co.,* 539 N.W.2d 352, 354 (Iowa 1995). In considering the record, we view the facts in the light most favorable to the party opposing the motion for summary judgment. *Gerst,* 549 N.W.2d at 812.

## II. Background Facts and Proceedings.

The record before the district court, when viewed in the light most favorable to General Car, shows the following facts. General Car is an Iowa corporation in the business of leasing automobiles, trucks and other motor vehicles. Lane & Waterman served as General Car's outside counsel from 1971 until the spring of 1993. This case involves legal services rendered by Lane & Waterman attorneys to General Car in connection with its registration of a service mark in 1977 and its renewal of that mark in 1985.

A. *Registration of mark.* In 1977, Gene Ehlers, president of General Car, asked C.D. Waterman, Jr. (Waterman), of Lane & Waterman, how General Car could protect its name and logos, "GENERAL" and "GL." Waterman suggested General Car obtain a federal registration of these service marks; General Car hired Lane & Waterman to do so. Only the events surrounding the "GENERAL" mark are at issue here.

Waterman contacted a trademark attorney in Virginia, Harold L. Stowell, to assist with the registration. In response to a request for information from Stowell, Gene Ehlers wrote to Waterman in June 1977, listing General Car's "operations as presently envisioned." This listing included leasing of au-

tomobiles, trucks, tractors, trailers, aircraft and boats. In fact, General Car had never leased aircraft or boats and Gene Ehlers informed Waterman of this fact. Waterman told Gene Ehlers General Car could register its mark for use with any or all services within a particular classification.

Stowell drafted an application to register the "GENERAL" service mark, based in part on the June 1977 letter from Gene Ehlers. The application was supported by an affidavit, also prepared by Stowell. The affidavit, signed by Gene Ehlers, stated:

> General [Car] has adopted and *is using* the servicemark shown in the accompanying drawing for: Leasing of Automobiles, Trucks, Tractors, Trailers, *Aircraft, and Boats,* and *Agricultural,* Industrial and Commercial equipment and Machinery....

(Emphasis added.) Immediately above Gene Ehlers's signature was the following declaration:

> all statements made herein of his knowledge are true and that all statements made on information and belief are believed to be true; and further, that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under section 1001 of Title 18 of the United States code and that such willful false statements may jeopardize the validity of the application or document or any registration resulting therefrom.

The record reflects that while the application to register the "GENERAL" mark was pending, Stowell communicated directly with Michael Ehlers, General Car's vice-president and general counsel. During one of these conversations, Stowell learned General Car had never leased farm implements. Accordingly, Stowell and Michael Ehlers agreed that the application should be amended to remove agricultural equipment; this amendment was made in 1979. The federal registration for the "GENERAL" mark was subsequently issued in April 1980 for use with "leasing automobiles, trucks, tractors, trailers, aircraft and boats."

B. *Renewal of mark.* In order to maintain or continue the federal registration of a service mark, an affidavit of use must be filed between the fifth and sixth year of registration. *See* 15 U.S.C. § 1058. An affidavit of incontestability may be filed at the same time. *Id.* § 1065. The two affidavits can be combined into a single sections 8 and 15 affidavit.

In mid–1984, Waterman assigned Dana Craig, a partner with Lane & Waterman, to handle the preparation and filing of the sections 8 and 15 affidavits for the "GENERAL" and "GL" marks. Craig prepared the affidavit for the "GL" mark first; it stated the mark was in use "for all the services stated in the registration." These services included leasing aircraft and boats. Craig sent the affidavit to Michael Ehlers for signing.

After reviewing the affidavit, Michael Ehlers expressed concern that the affidavit stated General Car leased aircraft and boats, when in fact it did not. Craig told Michael Ehlers that "[Michael's] concern was misp[laced], that it was not anything of great consequence, that it was descriptive of a particular class or category, and that [he]· should not be concerned by the particular language that was in the affidavit." Craig confirmed this advice in a later letter, stating

> As I discussed with you today, I originally prepared the affidavit to state that the mark is in continued use for all services stated in the registration. However, you have advised that General [Car] does not provide leasing services in connection with some of the items for which the original registration was obtained. Despite this fact, we have decided to submit the application as prepared to the Patent and Trademark Commissioner's office, with the understanding that the examiner may ask us for additional [advertising] specimens, at which time we may have to amend or refile the affidavit.

Michael Ehlers signed the affidavit and Craig filed it with the Patent and Trademark Office (PTO).

A similar affidavit had to be filed in the spring of 1985 to maintain the registration of the "GENERAL" mark. Craig prepared the required affidavit in which he stated the

mark "has been in continuous use in interstate commerce for five consecutive years from the date of registration to the present, on all the services stated in the registration." Michael Ehlers called Craig to confirm Craig's earlier advice and then signed the affidavit. Craig filed the affidavit with the PTO.

Michael Ehlers and Craig believed General Car could obtain a registration covering an entire class of services based on General Car's rendering of some services within the class. On the other hand, both men knew the representation made in the affidavit concerning General Car's use of the mark in leasing aircraft and boats was false.

C. *Cancellation proceeding.* A petition to cancel the federal registration of General Car's "GENERAL" mark was filed in an administrative proceeding with the PTO in April 1985 by General Rent–A–Car (GRAC), a Florida-based rental car company.[1] In an amendment to its petition, GRAC alleged the registration should be canceled because General Car had fraudulently obtained and maintained the mark based on misrepresentations it had leased boats and aircraft. In May, 1988, the PTO's Trademark Trial and Appeal Board (TTAB) ruled the mark should be canceled based on the false statements concerning use made in the affidavit supporting the original application and in the sections 8 and 15 affidavit.

General Car appealed this decision to the federal district court for the Southern District of Florida. Upon the court's de novo review, it affirmed the cancellation of the mark. *General Car & Truck Leasing Sys., Inc. v. General Rent–A–Car,* 17 U.S.P.Q.2d (BNA) 1398, 1401, 1990 WL 359368 (S.D.Fla. 1990). The court found both Gene Ehlers and Michael Ehlers knew when they signed the affidavits that General Car had never leased aircraft or boats as represented in the affidavits. *Id.* at 1399–400. The court also found these representations material in that General Car's initial registration and the maintenance of its registration would have been denied had the PTO known the extent of General Car's actual use of the mark. *Id.* at 1400. The federal district court stated the only disputed issue of fact in the case was the state of mind of Gene Ehlers and Michael Ehlers when they signed the affidavits. *Id.* The court concluded, however, their state of mind was irrelevant. *Id.* at 1401. It held that whether the Ehlers had a specific intent to deceive was not necessary for a finding of fraud; fraud sufficient to cancel the mark occurs when an applicant makes a representation that the applicant knew was false. *Id.* at 1400.

D. *Malpractice action.* In May 1993, General Car filed this legal malpractice action against Lane & Waterman, alleging Lane & Waterman was negligent in advising General Car to file affidavits containing false information. General Car further alleged that by virtue of the cancellation order, it lost its registration for the "GENERAL" mark and its consequent right to prevent the use of this mark by others in connection with the rental or leasing of cars and trucks. General Car sought damages measured by (1) its attorney fees incurred in defending the cancellation action, and (2) its lost opportunity to use or license a federally registered incontestable "GENERAL" mark. In its answer, Lane & Waterman alleged several affirmative defenses, two pertinent to this appeal: (1) the statute of limitations; and (2) the doctrine of in pari delicto. Lane & Waterman's later summary judgment motion was based, in part, on these defenses. The district court ultimately granted summary judgment in favor of Lane & Waterman, finding (1) General Car's suit was barred by the statute of limitations, and (2) the doctrine of in pari delicto barred any recovery based on the consequences of the misrepresentations made in the affidavits.

General Car appeals. Although two discovery disputes are raised on appeal in addition to the district court's ruling on the summary judgment motion, we need not address the discovery issues. We assume for purposes of our analysis those issues would be resolved in favor of General Car, and consider the record in that light. Even so, we hold the record conclusively establishes General Car acted in pari delicto with Lane & Water-

---

1. General Car did not hire Lane & Waterman to defend this action.

man in knowingly making false statements in the affidavits submitted to the PTO. Because this conclusion is a sufficient basis upon which to affirm the summary judgment for Lane & Waterman, we do not consider its statute of limitations defense.

### III.  Doctrine of In Pari Delicto.

■ The doctrine of in pari delicto is the legal counterpart to the equitable doctrine of unclean hands. *McKinley v. Weidner*, 73 Or.App. 396, 698 P.2d 983, 985–86 (1985); 27A Am.Jur.2d *Equity* § 132, at 611 (1996); *see also Ellwood v. Mid States Commodities, Inc.*, 404 N.W.2d 174, 184 (Iowa 1987) (limiting doctrine of unclean hands to actions seeking equitable relief). The doctrines are not, however, the same. The doctrine of unclean hands considers whether the party seeking relief has engaged in inequitable conduct that has harmed the party against whom he seeks relief. *See Ellwood*, 404 N.W.2d at 184; *Grandon v. Ellingson*, 259 Iowa 514, 523–25, 144 N.W.2d 898, 904–05 (1966); 1 Dan B. Dobbs, *Dobbs Law of Remedies* § 2.4(2), at 97–99 (2d ed.1993) [hereinafter *Dobbs* ]. In pari delicto, in contrast, focuses on the relative culpability of the parties. *See 3 Dobbs* § 13.6, at 573.

■ The culpability element of the in pari delicto doctrine requires that the plaintiff has been guilty of illegal or fraudulent conduct. 27A Am.Jur.2d *Equity* § 132, at 611; *see Kraetsch v. Stull*, 238 Iowa 944, 961, 29 N.W.2d 341, 349 (1947) (applying doctrine where plaintiff and defendant made misrepresentation to allow defendant to obtain a loan); *accord Mettes v. Quinn*, 89 Ill.App.3d 77, 44 Ill.Dec. 427, 429, 411 N.E.2d 549, 551 (1980) (denying relief to client in suit against attorney who had assisted client in perpetrating a fraud on a third person). Just as importantly, the doctrine applies only where the plaintiff was equally or more culpable than the defendant or acted with the same or greater knowledge as to the illegality or wrongfulness of the transaction.[2] *In re Syl-*

*vester's Estate*, 195 Iowa 1329, 1336, 192 N.W. 442, 444 (1923); *McKinley*, 698 P.2d at 986; 27A Am.Jur.2d *Equity* § 132, at 611; Black's Law Dictionary 791 (6th ed.1990) (defining term as "[i]n equal fault; equally culpable or criminal").

■ The purpose of the in pari delicto doctrine is to deter future misconduct by denying relief to one whose losses were substantially caused by his own fraud or illegal conduct. *Pantely v. Garris, Garris & Garris, P.C.*, 180 Mich.App. 768, 447 N.W.2d 864, 868 (1989); *McKinley*, 698 P.2d at 986. These public policy considerations are not affected by the theory upon which the wrongdoer seeks recovery. Consequently, if the required elements are present, the doctrine is applicable, even in the context of a negligence action. *E.g., McGhee's Adm'r v. Elcomb Coal Co.*, 288 Ky. 540, 156 S.W.2d 868, 869 (1941) (applying doctrine in wrongful death action where decedent and defendant employer were parties to an unlawful contract of employment, holding doctrine is equally applicable in tort and contract actions); *Evans v. Cameron*, 121 Wis.2d 421, 360 N.W.2d 25, 30 (1985) (applying doctrine in suit by client against former attorney for legal malpractice where attorney counseled client to commit perjury); *cf. Mettes*, 44 Ill.Dec. at 429, 411 N.E.2d at 551 (legal malpractice action in which court applied principle that one may not profit from his own fraud by recovering damages, noting that fact client claims she received negligent advice is immaterial to application of doctrine).

Thus, our inquiry here is twofold: (1) was General Car guilty of illegal or fraudulent conduct within the meaning of the in pari delicto doctrine; and (2) was General Car equally or more culpable than Lane & Waterman. If either requirement is not met or if there is a factual dispute with respect to the existence of either element, summary judgment should not have been granted.

---

2. Some courts consider application of the doctrine discretionary, refusing to apply it even when the parties are in pari delicto if, in a particular case, the court believes the public interest is best served by awarding relief to the wrongdoer. *See Pantely v. Garris, Garris & Gar-* *ris, P.C.*, 180 Mich.App. 768, 447 N.W.2d 864, 868 (1989); *McKinley*, 698 P.2d at 986. General Car has not suggested any reason that the public interest would be better served here by suspending the effect of the doctrine.

The district court found as a matter of law that both Gene and Michael Ehlers "knew that the affidavits contained false statements and that they were to be used to obtain an economic advantage in the form of a trademark." Based on this conduct, which the court held was conclusively established in the cancellation proceedings, it concluded the doctrine of in pari delicto applied to bar any recovery by General Car. General Car finds fault with this analysis for several reasons which can be generally categorized under the following two arguments: (1) the cancellation decision did not conclusively establish Gene and Michael Ehlers committed fraud of a type that can support application of the in pari delicto doctrine; and (2) General Car relied on the advice of Lane & Waterman in executing the affidavits as written because Lane & Waterman attorneys were experts on trademark law; therefore, Lane & Waterman had superior knowledge of the wrongdoing involved in these transactions.

## IV. *Nature of General Car's Fraud.*

Our first task is to determine the type of fraud that will trigger the in pari delicto doctrine. General Car argues an intent to deceive is a necessary element; Lane & Waterman contends it is not.

Iowa law is clear that an intent to deceive is not always necessary for a finding of fraud. *See Hyler v. Garner,* 548 N.W.2d 864, 872 (Iowa 1996) (fraud for purposes of rescission action does not include intent to deceive); *Rosen v. Board of Med. Examiners,* 539 N.W.2d 345, 349 (Iowa 1995) (reciting elements of common law fraud in context of application for licensure; elements did not include an intent to deceive), *cert. denied,* —— U.S. ——, 116 S.Ct. 1319, 134 L.Ed.2d 472 (1996). In certain circumstances, a mere intent to induce another to act or refrain from acting will suffice for fraud. *Hyler,* 548 N.W.2d at 872; *Rosen,* 539 N.W.2d at 349.

We have not found a case basing the in pari delicto doctrine on the parties' fraud where intent was an issue. Nevertheless, the in pari delicto doctrine has been applied frequently where the plaintiff's perjury is the cause of the harm suffered by the plaintiff. These cases are instructive because perjury,

like General Car's fraud in the cancellation proceeding, does not require an intent to deceive, only knowledge of falsity. Iowa Code § 720.2 (1995); *State v. Deets,* 195 N.W.2d 118, 122 (Iowa 1972) (listing elements of perjury).

In *Pantely v. Garris, Garris & Garris, P.C.,* the plaintiff sued her former attorney seeking damages resulting from her own perjury. 447 N.W.2d at 866. In a prior divorce action, the plaintiff had falsely told the court that she had been living in the county for more than ten days prior to filing the complaint for divorce, a fact necessary for the court's jurisdiction. *Id.* at 865–66. After the divorce had been granted and the plaintiff had remarried, the plaintiff's fraud in obtaining the divorce was discovered and the divorce decree was set aside. *Id.* at 866. The plaintiff then sued the attorneys who represented her in the divorce proceeding. *Id.* The trial court granted the attorneys' motion for summary judgment, applying the doctrine of in pari delicto. *Id.* at 868. The appellate court affirmed, holding that "a client who perjures herself [cannot] recover damages caused by the failed deceit from the lawyer who counseled the lie." *Id.* at 865.

Similarly, the California court of appeals dismissed a physician's lawsuit against his former lawyer who had advised the doctor to lie at the doctor's deposition in an earlier malpractice suit. *Blain v. The Doctor's Co.,* 222 Cal.App.3d 1048, 272 Cal.Rptr. 250, 261 (1990); *cf. Feld & Sons, Inc. v. Pechner, Dorfman, Wolfee, Rounick, & Cabot,* 312 Pa.Super. 125, 458 A.2d 545, 552 (1983) (affirming dismissal of claims asserted by clients suing their former lawyers who had advised the clients to lie and falsify exhibits; dismissal based on principle that "no court will lend its aid to a man who grounds his action upon an immoral or illegal act"). In *Evans v. Cameron,* the court affirmed the dismissal of the plaintiff's complaint seeking damages from her former lawyers who had advised her to lie under oath in bankruptcy proceedings. 360 N.W.2d at 30. The court held the client and lawyer were in pari delicto. *Id.*

We think the reasoning of these perjury cases applies here. The conduct of Gene and Michael Ehlers in lying in affidavits submitted to the PTO is akin to the conduct of the clients in the foregoing cases and should likewise provide a basis for application of the in pari delicto doctrine. Consequently, we hold an intent to deceive is not necessary for a finding of fraud sufficient to invoke the doctrine. Thus, the doctrine of in pari delicto applies where the defendant proves "(1) a material misrepresentation, (2) made knowingly (scienter), (3) with intent to induce [another] to act or refrain from acting, (4) upon which the [other] justifiably relies." *Rosen,* 539 N.W.2d at 349. If the doctrine of issue preclusion applies based on the judgment in the cancellation action, these elements are established here as a matter of law. We now turn to an examination of the fraud finding in the cancellation proceeding and the applicability of issue preclusion principles.

## V. Issue Preclusion.

Issue preclusion applies when four prerequisites have been established:

(1) the issue concluded must be identical; (2) the issue must have been raised and litigated in the prior action; (3) the issue must have been material and relevant to the disposition of the prior action; and (4) the determination made of the issue in the prior action must have been necessary and essential to the resulting judgment.

*Hunter v. City of Des Moines,* 300 N.W.2d 121, 123 (Iowa 1981). We think all prerequisites are met here to preclude General Car from relitigating whether it engaged in fraud

to register its service mark and renew that registration. *See Buttitta v. Newell,* 176 Ill. App.3d 880, 126 Ill.Dec. 330, 332–33, 531 N.E.2d 957, 959–60 (1988) (applying issue preclusion in legal malpractice action to preclude relitigation of whether plaintiff knowingly charged an unlawful interest rate, an issue previously determined adversely to plaintiff in suit brought by borrower).

The elements of fraud in the procurement or renewal of a federal trademark are (1) a false representation of a material fact; (2) the registrant's knowledge or belief that the representation is false; (3) the intention to induce the PTO to act or to refrain from acting in reliance on the misrepresentation; and (4) reasonable reliance on the misrepresentation. *San Juan Prods., Inc. v. San Juan Pools of Kan., Inc.,* 849 F.2d 468, 473 (10th Cir.1988); *First Union Nat'l Bank of Florida v. Perdido Motel Grp., Inc.,* 142 B.R. 460, 464 (N.D.Ala.1992). These elements are identical to the elements of fraud necessary to invoke the in pari delicto doctrine. Therefore, the issue of fraud in the cancellation proceeding is identical to the issue of fraud in this case.

The other requirements for issue preclusion are also met. The issue of fraud was clearly raised and litigated in the cancellation proceeding.[3] The determination of whether fraud existed was material and relevant to the disposition of that proceeding in that fraud was the asserted basis for cancellation of General Car's service mark. Finally, the issue of fraud was necessary and essential to the resulting judgment insofar as it provided the grounds upon which General Car's mark

3. Although fraud was clearly raised and litigated, the element of intent was not thoroughly discussed in the Florida federal district court's opinion in the cancellation case. It is not entirely clear whether the court actually made a factual finding on this element of fraud. Nevertheless, we do not think this omission, if it exists, precludes summary judgment. Even if the doctrine of issue preclusion does not apply with respect to the element of intent, Lane & Waterman has established there is no *factual* dispute with respect to this issue. General Car's position in the district court and on appeal has been that fraud for purposes of the in pari delicto doctrine requires an intent to deceive, a fact not established in the cancellation proceeding. We have held

against General Car on this legal contention— holding that only an intent to induce action is necessary. Notably, General Car has not claimed its officers had no intent to induce the PTO to act based on the representations made in their affidavits. The absence of such an argument is probably attributable to the fact that there can be no valid debate that Gene and Michael Ehlers intended the PTO to rely upon their statements. In fact, there was no other purpose in submitting the affidavits than to induce the PTO to register the mark and maintain that registration. *See Rosen,* 539 N.W.2d at 350 ("securing licensure is the only reason for submitting an application").

was canceled.[4] For these reasons, General Car is precluded from relitigating the issue of fraud in this case.

### VI. *Equality of Fault.*

■ We now examine whether the second requirement, that the parties to a transaction be equally guilty or blameworthy, is also met. We conclude it is.

General Car argues that its fault is not equal to the fault of Lane & Waterman because General Car relied in good faith upon the advice of Waterman and Craig "in the complicated process of obtaining and maintaining a federal registration." We think the Wisconsin Supreme Court accurately characterized the relative positions of an attorney and client who participate in a fraud:

> There may be circumstances in which the advice given by an attorney is so complex that the client would be unaware of the wrongfulness involved in following that advice. In such circumstances, more weight may be given to the influence an attorney will have over the client and the amount of reliance which the client can justifiably place in the attorney. The wrongfulness of lying while under oath, however, is apparent. Absent some allegation of special circumstances constituting an exception to the rule of *in pari delicto* independent of the attorney-client relationship, the client's deliberate act of lying under oath places that client *in pari delicto* with the attorney who advised that client to lie.

*Evans,* 360 N.W.2d at 28–29; *accord Blain,* 272 Cal.Rptr. at 258 (concluding "there is little plausibility in the claim that one was confused about the legality of lying in the teeth of the oath just sworn"). The Michigan Court of Appeals expressed a similar sentiment in *Pantely:*

> We can readily envision legal matters so complex and ethical dilemmas so profound that a client could follow an attorney's advice, do wrong and still maintain suit on the basis of not being equally at fault. But perjury is not complex; and telling the truth poses no dilemma.... A law degree does not add to one's awareness that perjury is immoral and illegal, any more than an accounting degree adds to one's awareness that tax fraud is immoral or illegal.

*Pantely,* 447 N.W.2d at 868 (citing *Evans,* 360 N.W.2d at 28–29).

We share these sentiments here. There was nothing "complicated" in 1977 about whether General Car was using the "GENERAL" mark for leasing aircraft and boats. Nor was there anything "complicated" in 1985 about whether General Car had continuously used its service mark for all services stated in the original registration. General Car's officers *knew* in 1977 and 1985 that the service mark had *never* been used for leasing aircraft and boats.

Although the statements made by Gene and Michael Ehlers were not made under oath, as in the perjury cases discussed above, the wrongfulness of their misrepresentations was apparent. The affidavit signed by Gene Ehlers contained his acknowledgment that any willful false statements were punishable by fine and imprisonment and would jeopardize registration of the service mark.[5] Michael Ehlers knew from his conversations with Stowell concerning the attempted registration of the "GENERAL" mark for use

---

4. General Car contends that the service mark could have been canceled upon a mere showing that Gene and Michael Ehlers "should have known" the representation was false. Therefore, it concludes, the federal court's finding of actual knowledge was not "necessary and essential to the resulting judgment." Although this is an interesting argument, we find it unnecessary to address it. Even if General Car is correct, we must still conclude as a matter of law General Car's officers *knew* their statements of use were false. Gene and Michael Ehlers both admit they knew General Car did not lease boats and aircraft when they made contrary representations in their affidavits. There is simply no basis in the summary judgment record before us to conclude otherwise. Consequently, whether based on the doctrine of issue preclusion or whether based on the undisputed record, the trial court correctly found as a matter of law that the false representations made in the affidavits were made with actual knowledge of their falsity.

5. It is not equally clear from the record that Waterman knew in 1977 that the affidavit signed by Gene Ehlers contained false representations since that affidavit was drafted and filed by attorney Stowell.

with leasing agricultural equipment that uses not within the scope of General Car's business should not be included in the affidavit. Knowledge of this same fact is apparent from Craig's letter to Michael Ehlers in 1984 concerning the renewal affidavit. Their plan at that time was to leave the false statements of use in the affidavit and if asked to verify them, then amend the affidavit to remove those uses. If there was any confusion with respect to the misrepresentations in the 1985 affidavit, it was with respect to the consequences of getting caught; there was no confusion concerning the inaccuracy of the statements or the impropriety of including them in the affidavit.[6] As to the culpable conduct itself—knowingly making a false representation of a material fact to the PTO—Gene Ehlers was at least equally, if not more, culpable than Waterman, and Michael Ehlers was equally culpable with Craig.

### VII. *Summary.*

We have considered all arguments made by the parties with respect to the in pari delicto issue, even though not specifically addressed in this opinion, and conclude the district court properly entered summary judgment in favor of Lane & Waterman. General Car's fraud in obtaining the registration of its service mark and the renewal of its registration is misconduct triggering the in pari delicto doctrine. The required elements of this fraud are undisputed, largely due to the findings made in the prior cancellation proceeding. Although Lane & Waterman counseled General Car's 1985 misrepresentation, General Car was equally culpable. Therefore, General Car was in pari delicto with Lane & Waterman and consequently, General Car's claim against Lane & Waterman is barred.

We recognize our decision has the effect of relieving Lane & Waterman from any civil liability for its participation in General Car's deception of the PTO. We share the public's interest in discouraging misleading conduct by lawyers as well as by their clients. The interest in deterring misconduct by lawyers, however, can be better addressed through grievance procedures designed to deal with the unethical actions of attorneys, rather than by rewarding one of the participants in the misconduct. *Pantely,* 447 N.W.2d at 868–69; *see Committee on Prof'l Ethics & Conduct v. Bauerle,* 460 N.W.2d 452, 453 (Iowa 1990) (suspending license of attorney who altered and backdated partnership agreement documents and falsely attested that persons had appeared and signed documents when they had not); *Committee on Prof'l Ethics & Conduct v. O'Donohoe,* 426 N.W.2d 166, 168–69 (Iowa 1988) (publicly reprimanding attorney for knowingly making a false statement of fact on a document filed for public record). In this way, both client and lawyer are forcefully reminded that such conduct will not be ignored and certainly will not be rewarded.

**AFFIRMED.**

---

**6.** General Car attaches some importance to Lane & Waterman's inaccurate advice that General Car could obtain a registration for an entire class of services even though it was not providing all the services within that class. We assume that based on this advice Michael Ehlers believed General Car could maintain its mark for the entire class of services which included aircraft and boats, even though it was not currently providing leasing services for aircraft or boats. While this fact may have some relevance to whether General Car intended by its misrepresentation to get something to which it was not

entitled, it does not change the fact it knowingly submitted false information to the PTO. Presumably, if the PTO believed General Car was using its mark in connection with aircraft and boats, this belief would reduce any possibility the registration would be approved for less than the full class of services. General Car and Lane & Waterman, through Michael Ehlers and Dana Craig, clearly misled the PTO to gain an advantage; the fact Craig erroneously informed Michael Ehlers that General Car was entitled to a mark covering the entire registration class does not change the deceptive nature of the affidavit.