FOX, Justice.
[¶1] The Mattheis Company (Company) operated a bar in Jackson, Wyoming. After learning that the Company had submitted a liquor license renewal application containing false information, the Town of Jackson (Town) initiated proceedings to revoke the Company's liquor license. Following a bench trial, the district court revoked the Company's liquor license. The Company timely appealed, and we affirm.
ISSUES
[¶2] The parties raise several issues that we rephrase and reorganize:
1. Does liquor-license revocation require a "gross violation" of Title 12, or a violation of the "intent and purpose" of Title 12?
2. Did the district court err in concluding that the Company's submission of a false liquor license renewal application was a gross violation of Title 12?
3. Did the district court abuse its discretion in revoking the Company's liquor license, rather than suspending it?
FACTS
[¶3] In 2007, brothers Steve and Mike Mattheis formed The Mattheis Company, purchased a liquor license, and began operating the Town Square Tavern (Tavern) in Jackson, Wyoming. The Tavern's 10-year lease was set to expire on March 31, 2017, unless the Company provided notice of its intent to exercise its five-year right-of-renewal 120 days before that date. Between 2007 and 2016, the Company renewed its liquor license annually-nine times in total.
[¶4] The Company first became aware that its liquor license was in jeopardy when Ms. Sandy Birdyshaw, Town Clerk, informed it that its December 9, 2016 liquor license renewal application was "inaccurate." The renewal application indicated that the Company's lease expired on March 31, 2022, referencing the lease the Town had "on file" and its five-year right-of-renewal provision. Ms. Birdyshaw called Steve Mattheis[1] and told him she could not certify the application complete because its lease expiration date did not match the March 31, 2017 expiration date contained in the Town's "on file" lease. She requested that the Company "provide the lease renewal that went to 2022 or something that would substantiate that's when the lease expired." In a follow-up email to Steve, she stated that "liquor renewal requires a lease be in place for the full renewal liquor year which runs to 3-31-2018."
*1271 [¶5] The record does not explain precisely what occurred between the Company and its landlord. In any event, the Company had not secured the anticipated five-year lease extension when it submitted its December 2016 application and failed to ever do so. Worried about the future of its business, the Company hired attorney Richard Mulligan to assist with the dispute.[2] The Company told Mr. Mulligan that it needed to have a lease through March 31, 2018, to renew its liquor license and that it was important that the Tavern remain open during Jackson's summer "prime season," which would require having a lease until at least October 31, 2017. Mr. Mulligan and the landlord's attorney attempted to reach an agreement over the next several weeks.
[¶6] Meanwhile, uncertain of whether the Company would secure a new lease before the license expired on March 31, 2017, Steve asked Ms. Birdyshaw what he could do to preserve it. Ms. Birdyshaw informed Steve that the Company could transfer the license to another location on a non-operational status for up to two years and transfer it back to the Tavern location when the Company secured a new lease. Steve also confirmed with the Wyoming Liquor Division (Division) that it was possible to "park" a liquor license on non-operational status for up to two years. On February 1, 2017, the Company submitted a transfer application to the Town, explaining that it was parking the license at another location on non-operational status due to a lease dispute with its landlord. The Town Council approved the transfer.
[¶7] Eventually, the Company and its landlord reached an agreement. On March 3, 2017, the parties executed a lease with a term from April 1, 2017, to March 31, 2018. The same day, the parties executed a "Modification of Lease Term" that reduced the term to a seven-month period ending on October 31, 2017. Three days later, Steve and Mike executed an application to transfer the liquor license back to the Tavern location. The Company stated that the Tavern lease expired on March 31, 2018, directly above the application provision: "NOTE: Please submit a copy of the lease with the application. W.S. 12-4-103(a)(iii) requires the lease be valid THROUGH the TERM OF THE LICENSE ...." (Emphasis in original.) Steve and Mike signed, and Mr. Mulligan notarized, the application directly beneath its "Oath or Verification" section, which stated: "Under penalty of perjury, and the possible revocation or cancellation of the license, I swear the above stated facts, are true and accurate ." (Emphasis in original.)[3] Steve and Mike each signed affidavits authorizing the Town to conduct investigations into the truth of the information in the application, both of which stated: "The applicant hereby agrees to comply fully with the rules and regulations of the Town of Jackson governing the license/permit requested." Mr. Mulligan also notarized these documents. The same day, the Company submitted the application to the Town, attaching the one-year lease and the affidavits, among other required documents. It did not submit the modification that shortened the lease term to October 31, 2017.
[¶8] The Town Council approved the transfer application, and the Tavern conducted business throughout the summer of 2017. During that period, the Tavern's landlord entered into a new lease agreement with a local restaurateur, set to begin after the Tavern's modified lease expired on October 31, 2017. In August 2017, the future tenant applied to the Town for a liquor license. Ms. Birdyshaw noticed that the application cited *1272 the Tavern address as its place of business and became "concerned that there might be a lease issue" because she "thought there was a one year lease in place with The Mattheis Company." She emailed Steve, saying that the application "kind of took us [ ] by surprise," and requested that he share any plans the Company had for its liquor license. She reminded him that the Company must have a written lease for the duration of the liquor-license period and asked him to confirm the Company's last occupancy date.
[¶9] In the meantime, the future tenant's attorney gave Ms. Birdyshaw a copy of the "Modification of Lease Term" that changed the term expiration to October 31, 2017. The Town sent the Company a letter notifying it that, unless the Company provided evidence disproving the inconsistency between its March 2017 application and the lease modification, it would initiate revocation proceedings. The Company admitted the inconsistency, but asked the Town Council for leniency, asserting they "had no idea that we were signing something that would jeopardize our business or our liquor license. We wouldn't knowingly sign documents with false information, nor would our attorney allow us to do so (and he in fact notarized all documents)."
[¶10] The Town filed an action to revoke the Company's liquor license,[4] arguing that its omission of the lease modification from its March 2017 application amounted to a "gross violation" of Title 12 and that it violated the "intent and purpose" of Title 12. See Wyo. Stat. Ann. §§ 12-1-101 to 12-10-102 (LexisNexis 2017). The Company admitted that its March 2017 application contained false information but argued that it had neither committed a "gross violation" of Title 12 nor violated the Title's "intent and purpose" because its mistake was not purposeful or flagrant and because it had acted under the advice of counsel. It also requested that the district court suspend the license in lieu of revoking it, in part because other businesses that had committed liquor-license violations had not had their licenses revoked.
[¶11] The district court held that the "Company's conduct amount[ed] to a gross violation, which violated the intent and purpose of the liquor licensing statute[s]," finding:
Mattheis Company had applied for the renewed annual license every year for almost a decade. It was not a novice or newcomer to the process. The renewal license application is a form provided by the Wyoming Liquor Division. ... Each includes an express provision that reads as follows: "NOTE: Please submit a copy of the lease with the application. W.S. 12-4-103(a)(iii) requires the lease to be valid THROUGH the TERM OF THE LICENSE and MUST contain a provision for the SALE OF ALCOHOLIC BEVERAGES." (emphasis in original). Mattheis Company provided testimony that Steve Mattheis was aware of the one-year lease requirement. He discussed that requirement with the Town of Jackson when it had the lease dispute with its landlord. According to his testimony, that one-year lease requirement was of paramount concern from mid-December 2016 to the time the license was renewed in March 2017.
The court found the submission of the application representing that the Company had a one-year lease "was a flagrant violation of the Wyoming liquor licensing statutes" and "not a careless act or a negligent oversight." It also found the violation "contrary to the purpose and intent of the licensing statutes."
[¶12] Turning to the Company's advice-of-counsel defense, the district court noted that *1273 this Court has never considered whether the defense is available in a liquor-license revocation proceeding. It concluded that even if the defense applied, it would fail in these circumstances. The district court was "unable to find by a preponderance of the evidence" that Mr. Mulligan had advised the Company "that it was legal to provide false information on the license application." Moreover, it found that even if the Company had received that advice, it could not rely on it in good faith:
Even if Mr. Mulligan was engaged to resolve the license problem, and even if Mr. Mulligan's actions could be construed to allow an inference to Steve Mattheis that he could submit false information on his license application, the Court cannot find that reliance on such advice was in good faith. Mr. Mattheis was acutely aware of the need for a one-year lease. The requirement is stated in a mix of bold and underlined letters on the license application. Mr. Mattheis had filed applications containing this requirement for ten years. Mr. Mattheis discussed the need for a one-year (or longer) lease with Ms. Birdyshaw in December 2016. He took steps to preserve the license in the event he could not get a new one-year lease by transferring the license elsewhere. There are numerous pieces of correspondence admitted into evidence of Mr. Mattheis working with the Town of Jackson to find a way to preserve its license because it had no one-year lease in place. To assert that any reliance on counsel's alleged advice was in good faith is not possible in a case where Mr. Mattheis had such affirmative knowledge corroborated by his actions to preserve the license. ... Mr. Mattheis also unequivocally admitted in his testimony that he knew of the one-year license requirement.
Finally, the district court declined to order license suspension over revocation. This appeal followed.
DISCUSSION
I. Before a court can revoke a liquor license, it must conclude that the license holder committed a gross violation of Title 12
[¶13] The Town argues the Company committed a "gross violation" of Title 12 and that it violated the "intent and purpose" of Title 12, each standard independently warranting revocation of its liquor license. The Company responds that only a "gross violation" of Title 12 warrants license revocation and that this standard was not met. The parties generally agree that a gross violation of Title 12 requires proof of "willful" and "flagrant" conduct but disagree whether such conduct occurred in this case. The district court concluded that The Mattheis Company's conduct violated both standards, without deciding if either or both applied.
[¶14] This issue presents a question of statutory interpretation that we review de novo. In re Estate of Frank , 2019 WY 4, ¶ 6, 432 P.3d 885, 887 (Wyo. 2019) (citing In re Estate of Meyer , 2016 WY 6, ¶ 17, 367 P.3d 629, 634 (Wyo. 2016) ). When interpreting statutes, our primary objective is to give effect to the legislature's intent as reflected in the plain and ordinary meaning of the words used in the statutes. Rhoads v. State , 2018 WY 143, ¶ 9, 431 P.3d 1130, 1133 (Wyo. 2018). We are guided by the full text of the statute, giving effect to every word, clause, and sentence, and construing all components of a statute in pari materia . Bear Cloud v. State , 2013 WY 18, ¶ 30, 294 P.3d 36, 44 (Wyo. 2013) (citing LM v. Laramie Cty. Dep't of Family Servs. (In re MN) , 2007 WY 189, ¶¶ 4-5, 171 P.3d 1077, 1079-80 (Wyo. 2007) ). A statute is unambiguous if reasonable people can agree on its meaning with consistency and predictability. Conversely, a statute is ambiguous if it is vague or uncertain and subject to varying interpretations. MF v. State , 2013 WY 104, ¶ 8, 308 P.3d 854, 857 (Wyo. 2013) (citing Rock v. Lankford , 2013 WY 61, ¶ 19, 301 P.3d 1075, 1081 (Wyo. 2013) ). "However, the fact that opinions may differ as to a statute's meaning is not conclusive of ambiguity. Ultimately, whether a statute is ambiguous is a matter of law to be determined by the court." Romsa v. State ex rel. Wyo. Dep't of Transp. , 2012 WY 146, ¶ 22, 288 P.3d 695, 702 (Wyo. 2012) (quoting McClean v. State , 2003 WY 17, ¶ 6, 62 P.3d 595, 598 (Wyo. 2003) ).
[¶15] Wyo. Stat. Ann. § 12-7-101 states: "Any violation of this title by any manufacturer, *1274 rectifier, wholesaler, licensee, employee or agent thereof is sufficient cause for the suspension and in the case of gross violation the revocation of the license of the licensee." "Gross," as used in Wyo. Stat. Ann. § 12-7-101, is an adjective that describes the type of violation sufficient for revocation. In the context of negligence, we have described "gross" as a difference in degree and indicated that it serves to measure the level or extent of the conduct in question. See McClure v. Latta , 348 P.2d 1057, 1062 (Wyo. 1960) ("Ordinary and gross negligence differ in degree of inattention .... The element of culpability which characterizes all negligence is, in gross negligence, magnified to a high degree as compared with that present in ordinary negligence."). This understanding aligns with dictionary definitions of the term, which often guide our determination of the plain language used in statutes. In re Birkholz , 2019 WY 19, ¶ 13, 434 P.3d 1102, 1106 (Wyo. 2019) (citing BJ Hough, LLC v. City of Cheyenne , 2012 WY 140, ¶ 25, 287 P.3d 761, 770 (Wyo. 2012) ). Black's Law Dictionary defines "gross" as:
1. Conspicuous by reason of size or other attention-getting qualities; esp., obvious by reason of magnitude < a gross Corinthian column>.
2. Undiminished by deduction; entire < gross profits>.
3. Not specified or detailed; general < a gross estimate>.
4. Coarse in meaning or sense < gross slang>.
5. Repulsive in behavior or appearance; sickening < a gross fellow with gross habits>.
6. Beyond all reasonable measure; flagrant < a gross injustice>.
Gross , Black's Law Dictionary (11th ed. 2019) (emphasis added). See also Gross , Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/gross (last visited July 17, 2019) ("glaringly noticeable usually because of inexcusable badness or objectionableness < a gross error >"). Thus, we conclude that "gross" as used in Wyo. Stat. Ann. § 12-7-101 speaks to the degree of violation that must occur before a license can be revoked and requires a transgression of Title 12 so unreasonable as to be flagrant.
[¶16] Conflict arguably arises when section 101 is read alongside Wyo. Stat. Ann. § 12-7-201(b), which permits revocation "upon proof that the intent and purpose of [Title 12] has been violated." However, the sections are not irreconcilable under our established methods of statutory interpretation. "Each word of a statute is to be afforded meaning, with none rendered superfluous." In re JB , 2017 WY 26, ¶ 16, 390 P.3d 357, 361 (Wyo. 2017). The clear "intent and purpose" of Title 12 is to regulate the sale of alcoholic beverages. See generally Wyo. Stat. Ann. §§ 12-1-101 through 12-10-102. Thus, under Wyo. Stat. Ann. § 12-7-201(b) any violation that transgressed Title 12's methods of alcoholic beverage regulation would be sufficient to revoke a liquor license. If that were the case, it would never be necessary to show a "gross violation," which certainly requires a higher standard of proof than any violation. We refuse to read the "gross violation" standard out of Title 12. Conversely, requiring a gross violation does not read section 12-7-201(b) 's "intent and purpose" standard out of Title 12. "Gross" merely describes with greater specificity the type of violation license revocation contemplates. We find no ambiguity in the statutes. A gross violation of Title 12 will necessarily violate the intent and purpose of Title 12. Thus, it remains true that "[t]he court may revoke the license or permit upon proof that the intent and purpose of [Title 12] has been violated," subject to the qualification that the violation be gross. We therefore hold a court must conclude that a licensee committed a gross violation of Title 12 before it can revoke a liquor license.
II. The district court did not err in concluding The Mattheis Company committed a gross violation of Title 12, despite its asserted reliance on the advice of counsel
[¶17] The question is whether there was sufficient factual evidence for the district court to conclude that a gross violation occurred. The Company argues that a "single, isolated violation such as the one before this Court, one committed upon the advice of *1275 experienced counsel, unknowingly, and which has no victim and no adverse consequence to anyone other than The Mattheis Company, does not rise to the level of a 'gross violation.' " It asserts that the Wyoming Liquor Division's and the Town's history of enforcing Title 12 demonstrates that a "gross violation" must be "very serious, repeated, and flagrant" because other licensees have not had their licenses revoked in circumstances the Company considers comparable. It asserts that "good faith reliance on the advice of counsel is a complete defense to certain actions, and may be considered a palliative" in a liquor-license revocation proceeding. The Town counters that one gross violation is sufficient cause to revoke a liquor license, that the Division's and the Town's "enforcement history" do not control the result in this case, and that the record supports the district court's conclusion that the Company committed a gross violation of Title 12. It argues reliance on advice of counsel should not be a defense in a liquor-license revocation action and, alternatively, that the defense does not apply in this case.
[¶18] Following a bench trial, we review a district court's factual findings for clear error and its conclusions of law de novo. Acorn v. Moncecchi , 2016 WY 124, ¶ 23, 386 P.3d 739, 748 (Wyo. 2016) (citing Wallop Canyon Ranch, LLC v. Goodwyn , 2015 WY 81, ¶ 21, 351 P.3d 943, 949-50 (Wyo. 2015) ).
The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail reweighing disputed evidence. Findings of fact will not be set aside unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. In considering a trial court's factual findings, we assume that the evidence of the prevailing party below is true and give that party every reasonable inference that can fairly and reasonably be drawn from it. We do not substitute ourselves for the trial court as a finder of facts; instead, we defer to those findings unless they are unsupported by the record or erroneous as a matter of law. The district court's conclusions of law are reviewed de novo .
Meiners v. Meiners , 2019 WY 39, ¶ 8, 438 P.3d 1260, 1265-66 (Wyo. 2019) (quoting Galiher v. Johnson , 2018 WY 145, ¶ 6, 432 P.3d 502, 507 (Wyo. 2018) ).
[¶19] As with gross negligence, whether a licensee has committed a gross violation of Title 12 "must be determined by the facts and circumstances in the particular case." McClure , 348 P.2d at 1062 ("whether or not a motorist involved in an accident has been guilty of gross negligence must be determined by the facts and circumstances in the particular case"); 57A Am. Jur. 2d Negligence § 239 ("The degree of negligence in any particular case is ordinarily a question of fact."). Consequently, a gross violation may indeed be purposeful or repeated, but need not be in every situation. Thus, we agree with the district court that "whether conduct is repeated may be a factor to consider but does not control whether certain conduct is a gross violation."[5] The district court found that Steve Mattheis was "acutely aware of the need for a one-year lease." The record supports this finding: Ms. Birdyshaw told him he needed a lease in place through March 31, 2018; the falsified application contained the requirement in capitalized and underlined words (as did the nine renewal applications he had completed over the last decade); he had "parked" the license roughly one month before because he knew it was the only way to comply with the one-year lease requirement; and he testified that he knew *1276 about the requirement.[6] He was also acutely aware that he did not have a one-year lease for the Tavern location. He testified that it was "very clear" to him that the lease modification reduced the term of the lease to less than a one-year period. He also testified that he knew when he submitted the application indicating that the Company had a lease through March 31, 2018, that the lease in fact expired on October 31, 2017. We find no clear error in the district court's conclusion that the Company knowingly submitted a false application under penalty of perjury. We agree that the Company's actions constitute a gross violation of Title 12.[7]
[¶20] Turning to the Company's asserted reliance on advice of counsel, we do not decide whether reliance on advice of counsel may ever be a complete defense in a liquor-license revocation proceeding. The Company points out that reliance on advice of counsel "is a complete defense to certain actions," such as malicious prosecution claims, but does not advocate for its adoption as a complete defense to a license revocation action. Instead, it explicitly "asks this Court ... to weigh its reliance on the advice of its counsel in mitigation of the penalty to be applied." Thus, we limit our analysis to consideration of whether reliance on advice of counsel can serve as a mitigator in this liquor-license revocation proceeding.
[¶21] The Company's asserted reliance on advice of counsel does not mitigate its violation of Title 12. As noted, Steve Mattheis was keenly aware of the one-year lease requirement and the fact that the Company did not have one. Although he claimed that the manner in which Mr. Mulligan presented him with the lease documents led him to believe he did not need to submit the modification, the district court was "unable to find by a preponderance of the evidence" that Mr. Mulligan advised him "that making a false representation on [the] license application was legal." The record supports this conclusion. Steve Mattheis knew of the lease term requirement and swore to the truth of his license application. He cannot claim that advice of counsel excuses his violation of the law, particularly when the record does not establish that he received advice negating that knowledge.[8]
*1277 [¶22] We hold the district court did not err in concluding that the Company committed a gross violation of Title 12 and correctly rejected the Company's advice-of-counsel defense.
III. The district court did not abuse its discretion in revoking the Company's liquor license
[¶23] The Company asks this Court to "exercise its discretion to suspend, rather than revoke" its license. As a court of appellate review, we have no discretion to suspend the Company's license. That power belongs to the district court. Wyo. Stat. Ann. § 12-7-102 ("In a proceeding for revocation of a liquor license and when a licensee is found guilty of violating W.S. 12-1-101 through 12-8-301, the district court ... may, if it appears inadvisable to revoke the license, suspend the license[.]"). The question before this Court is whether the district court abused its discretion in revoking the Company's license in the first instance. "Our primary goal in reviewing for an abuse of discretion is determining whether the district court's decision is reasonable. We view the evidence in the light most favorable to the district court's determination, affording to the prevailing party every favorable inference and omitting from our consideration conflicting evidence." Smith v. Kelly , 2019 WY 60, ¶ 20, 442 P.3d 297, 301 (Wyo. 2019) (quoting Kappen v. Kappen , 2015 WY 3, ¶ 10, 341 P.3d 377, 381 (Wyo. 2015) ).
[¶24] The court acknowledged that it had the discretion to order suspension of the license but decided against it, reasoning:
Wyo. Stat. § 12-7-102 indicates that suspension for the term of the license may be appropriate when revocation is inadvisable. Thus, the Court can either revoke the license or suspend the license. The Court cannot find that a suspension in this instance would be appropriate due to the gravity of the violation. Moreover, a suspension would be of little to no consequence. In instances where a licensee is operating a business, a suspension for the term of the license would likely result in decreased or no revenue for a period of time, which could be considered a serious consequence. In this case, however, the licensee has no lease and no place of business and those facts gave rise to this revocation action. A suspension of the license then would merely preserve the status quo while Mattheis Company finds a new location for the license or a buyer for the license. If the Town of Jackson considered that type of negligible consequence to be appropriate, it could have suspended the license directly as the licensing authority. It did not do so. While the Court has discretion to second-guess that decision and suspend the license, the Court cannot find that to be an appropriate consequence after having found that Mattheis Company was affirmatively aware of the licensing requirements and knowingly failed to comply by submitting a liquor license, application under oath, containing false information.
[¶25] The Company criticizes the district court for stating that the Town could have suspended the license directly because "[s]uspension is an option reserved only to the Court." Nevertheless, the record shows that the district court understood that it had discretion to either suspend or revoke the license, considered the evidence before it and the nature of the violation, and decided that suspension would not be a meaningful consequence in the circumstances. We hold the district court did not abuse its discretion in ordering revocation of the Company's liquor license.
CONCLUSION
[¶26] Before a district court can revoke a liquor license, it must conclude that the licensee committed a gross violation of Title 12. The district court correctly determined that The Mattheis Company committed a gross violation of Title 12, notwithstanding its asserted reliance on the advice of counsel. The district court did not abuse its discretion in *1278 revoking The Mattheis Company's liquor license instead of suspending it. Affirmed.

When referring to the Mattheis brothers individually we use their first names to avoid confusion.

Throughout this litigation, the parties hotly contested the scope of Mr. Mulligan's representation. The Town claimed the Company hired Mr. Mulligan exclusively to resolve the lease dispute and that he had no duty to ensure its liquor license application was properly completed. The Company claimed the lease dispute was inextricably linked to issues with its liquor license, and therefore Mr. Mulligan had a duty to properly advise it concerning the license. There is no engagement letter between the Company and Mr. Mulligan, and witness testimony concerning the scope of Mr. Mulligan's representation conflicts. The district court could not "discern with affirmative evidence the scope of legal services requested of Mr. Mulligan."

Each application the Company submitted between 2007 and 2017, including the February 2017 transfer application, recited the one-year lease requirement and required the applicant to swear to the truth of the application under penalty of perjury.

The liquor license was set to expire in March 2018, raising the concern that a justiciable controversy might no longer exist by the time of trial months later. However, Wyo. Stat. Ann. § 12-7-201(b) provides:
upon a showing to the satisfaction of the court that there are probable grounds for believing the license holder's license should be revoked, the court may issue an order suspending a license during the pendency of an action for its revocation and no bond shall be required as a condition to the issuance of the suspension order. Appeal from the final district court decision may be taken according to the Wyoming Rules of Appellate Procedure, but the order of revocation shall remain in effect pending a decision by the appellate court.
The district court ordered a stay according to this procedure. We conclude the stay had the effect of preserving a justiciable controversy for trial. Because we affirm, we need not consider the effect of a reversal on appeal.

Below, and on appeal, the Town asserted that the Company had committed repeated violations of Title 12 because it had previously been cited for serving a minor and warned about its patrons' late-night, rowdy behavior in and around the Tavern. Although we doubt the relevance of these incidents to the violation that prompted this proceeding, we need not address them because the district court did not rely on this evidence in concluding that the Company had committed a gross violation of Title 12.

The Company claims the district court mischaracterized testimony from the Wyoming Liquor Division's Chief of Enforcement, Tom Montoya. Mr. Montoya testified that license revocation could be appropriate if an applicant submitted false information on a license application. The Company takes issue with the district court's statement that: "Mr. Montoya's opinion that submitting false information on an application is a violation warranting revocation corroborates the Court's finding." It asserts this statement shows that the court considered the testimony an opinion on the "ultimate issue" in the case, when it should have been given "no weight whatsoever." We do not find that the district court gave undue weight to Mr. Montoya's opinion. Directly preceding the offending statement, the court acknowledged that Mr. Montoya's opinion was "useful although not binding" and "[e]ven without considering Mr. Montoya's testimony ," it found the Company committed a gross violation by knowingly failing to disclose that it did not have a one-year lease. (Emphasis added.) The district court's factual findings support its conclusion that the Company committed a gross violation of Title 12, independent from any reliance on Mr. Montoya's testimony.

The Company's reliance on the Division's and the Town's enforcement history do not convince us otherwise. Both parties discuss a 1999 decision letter suspending a liquor license after an administrative contested case hearing and evidence that another restaurant in Jackson had committed violations of Title 12 without having a revocation proceeding brought against it. However, neither party explains why we should afford any weight to these unrelated, non-binding matters. Like the district court, we do not consider these matters in concluding that the Company committed a gross violation of Title 12.

The Company claims several of Steve Mattheis's "outward manifestations" show that he relied on advice of counsel in good faith. The district court apparently did not credit these "outward manifestations" as indicators of good faith, nor do we under our standard of review. Acorn , 2016 WY 124, ¶ 23, 386 P.3d at 748 ("Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail reweighing disputed evidence."). The Company also argues that the court improperly excluded evidence that it is normal for attorneys to craft "private agreements" relating to a statutory liquor licensing requirement and, thus, that it was reasonable for Steve Mattheis to rely on the "side agreement" his attorney crafted in this case. The Company asserts the excluded evidence was "highly relevant" but cites no authority supporting that assertion. It also fails to cite any authority supporting a conclusion that the district court abused its discretion. Schell v. Scallon , 2019 WY 11, ¶ 28, 433 P.3d 879, 888 (Wyo. 2019) ("We review an evidentiary ruling for an abuse of discretion."). We therefore decline to consider whether the district court erred in excluding the evidence. Mitchell v. Preston , 2019 WY 41, ¶ 33, 439 P.3d 718, 725 (Wyo. 2019).