# IN THE SUPREME COURT, STATE OF WYOMING

# 2021 WY 14

OCTOBER TERM, A.D. 2020

January 28, 2021

THE MATTHEIS COMPANY,

Appellant
(Defendant),

v.

RICHARD J. MULLIGAN, individually, and
MULLIGAN LAW OFFICE, PC, a Wyoming
corporation,

Appellees
(Defendants).

S-20-0078

*Appeal from the District Court of Teton County*
*The Honorable Bill Simpson, Judge*

*Representing Appellant:*
Richard R. Thomas of Smith LC, Jackson, Wyoming.

*Representing Appellee:*
Billie LM Addleman and Erin E. Berry of Hirst Applegate, LLP, Cheyenne, Wyoming. Argument by Ms. Berry.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**BOOMGAARDEN, Justice.**

[¶1]    This appeal involves two separate but related Teton County District Court cases.  In 2018, the court revoked The Mattheis Company's (the Company's) liquor license.[1]  We affirmed.  *Mattheis Co. v. Town of Jackson*, 2019 WY 78, 444 P.3d 1268 (Wyo. 2019).  In 2019, the Company sued Richard J. Mulligan and Mulligan Law Office, P.C., (Mulligan) for legal malpractice related to the revocation.  The court granted Mulligan summary judgment, concluding that collateral estopped barred the Company from relitigating causation as would be necessary to recover on its malpractice claim.  The Company appeals.  We affirm.

## *ISSUE*

[¶2]    The dispositive issue is whether the Company is barred from pursuing its legal malpractice claim.

## *FACTS*

[¶3]    The facts from *Mattheis Co.* place the legal malpractice claim in context.

> In 2007, brothers Steve and Mike Mattheis formed The Mattheis Company, purchased a liquor license, and began operating the Town Square Tavern (Tavern) in Jackson, Wyoming.  The Tavern's 10-year lease was set to expire on March 31, 2017, unless the Company provided notice of its intent to exercise its five-year right-of-renewal 120 days before that date.  Between 2007 and 2016, the Company renewed its liquor license annually—nine times in total.
>
> The Company first became aware that its liquor license was in jeopardy when Ms. Sandy Birdyshaw, Town Clerk, informed it that its December 9, 2016 liquor license renewal application was "inaccurate."  The renewal application indicated that the Company's lease expired on March 31, 2022, referencing the lease the Town had "on file" and its five-year right-of-renewal provision.  Ms. Birdyshaw called Steve Mattheis and told him she could not certify the application complete because its lease expiration date did not match the March 31, 2017 expiration date contained in the Town's "on file" lease.  She requested that the Company "provide the lease renewal that went to 2022 or something that would substantiate that's when the lease

---

[1] We refer to the district court in the revocation proceeding as the "revocation court" to avoid confusion.

1

expired." In a follow-up email to Steve, she stated that "liquor renewal requires a lease be in place for the full renewal liquor year which runs to 3-31-2018."

. . . .

[T]he Company had not secured the anticipated five-year lease extension when it submitted its December 2016 application and failed to ever do so. Worried about the future of its business, the Company hired attorney Richard Mulligan to assist with the dispute. The Company told Mr. Mulligan that it needed to have a lease through March 31, 2018, to renew its liquor license and that it was important that the Tavern remain open during Jackson's summer "prime season," which would require having a lease until at least October 31, 2017. Mr. Mulligan and the landlord's attorney attempted to reach an agreement over the next several weeks.

Meanwhile, uncertain of whether the Company would secure a new lease before the license expired on March 31, 2017, Steve asked Ms. Birdyshaw what he could do to preserve it. Ms. Birdyshaw informed Steve that the Company could transfer the license to another location on a non-operational status for up to two years and transfer it back to the Tavern location when the Company secured a new lease. Steve also confirmed with the Wyoming Liquor Division (Division) that it was possible to "park" a liquor license on non-operational status for up to two years. On February 1, 2017, the Company submitted a transfer application to the Town, explaining that it was parking the license at another location on non-operational status due to a lease dispute with its landlord. The Town Council approved the transfer.

Eventually, the Company and its landlord reached an agreement. On March 3, 2017, the parties executed a lease with a term from April 1, 2017, to March 31, 2018. The same day, the parties executed a "Modification of Lease Term" that reduced the term to a seven-month period ending on October 31, 2017. Three days later, Steve and Mike executed an application to transfer the liquor license back to the Tavern location.

. . . .

2

The same day, the Company submitted the application to the Town, attaching the one-year lease and the affidavits, among other required documents. It did not submit the modification that shortened the lease term to October 31, 2017.

The Town Council approved the transfer application, and the Tavern conducted business throughout the summer of 2017. During that period, the Tavern's landlord entered into a new lease agreement with a local restaurateur, set to begin after the Tavern's modified lease expired on October 31, 2017.

*Mattheis Co.*, ¶¶ 3–8, 444 P.3d at 1270–71 (footnotes omitted).

[¶4]     When the Town learned of the lease modification in August 2017, it initiated the revocation proceeding.

The Town filed an action to revoke the Company's liquor license, arguing that its omission of the lease modification from its March 2017 application amounted to a "gross violation" of Title 12 and that it violated the "intent and purpose" of Title 12. *See* Wyo. Stat. Ann. §§ 12-1-101 to 12-10-102 (LexisNexis 2017). The Company admitted that its March 2017 application contained false information but argued that it had neither committed a "gross violation" of Title 12 nor violated the Title's "intent and purpose" because its mistake was not purposeful or flagrant and because it had acted under the advice of counsel. It also requested that the district court suspend the license in lieu of revoking it, in part because other businesses that had committed liquor-license violations had not had their licenses revoked.

The district court held that the "Company's conduct amount[ed] to a gross violation, which violated the intent and purpose of the liquor licensing statute[s][.]"

. . . .

Turning to the Company's advice-of-counsel defense, the district court noted that this Court has never considered whether the defense is available in a liquor-license revocation proceeding. It concluded that even if the defense applied, it would fail in these circumstances. The district court was "unable to find by a preponderance of the evidence" that Mr.

3

Mulligan had advised the Company "that it was legal to provide false information on the license application." Moreover, it found that even if the Company had received that advice, it could not rely on it in good faith[.]

. . . .

Finally, the district court declined to order license suspension over revocation.

*Id.* ¶¶ 10–12, 444 P.3d at 1272–73 (footnote omitted).  The Company appealed.  *Id.* ¶ 12, 444 P.3d at 1273.

[¶5]    While its appeal was pending, the Company sued Mulligan for malpractice.  First, the Company claimed Mulligan's conduct from December 2016 to August 2017 fell below the accepted standard of care because Mulligan failed to:

(a) Communicate truthfully to [the Company] that [its] landlord had agreed to mediate the lease dispute with [the Company];

(b) Refrain from devising, approving, and putting into action the plan for the execution of the one-year lease and modification as the solution to [the Company's] liquor license renewal;

(c) Advise and disclose to [the Company] that submitting only the one-year lease with its application would jeopardize [the Company's] liquor license;

(d) Advise [the Company] that, under the circumstances, it should retain the liquor license at the 110 East Broadway location rather than submit the application with only the one-year lease attached; and

(e) Refrain from advising or allowing [the Company] to submit the one-year lease to the Town of Jackson, knowing of the existence of the modification, for the purpose of transferring [the Company's] liquor license back to the 20 East Broadway and renewing that liquor license.

4

[¶6]     Second, the Company claimed Mulligan breached the duty he owed the Company, as his former client after August 2017, to give truthful testimony in the revocation proceeding. Mulligan allegedly breached that duty by falsely testifying that the Company did not engage him to advise it on the liquor license, he did not advise the Company on the liquor license, and he never advised the Company to submit only the one-year lease to the Town. According to the Company, Mulligan directly, proximately, and foreseeably caused "at least the following damages: (a) Loss of its valuable liquor license; (b) Loss of its valuable business at the Tavern; and (c) Substantial attorney's fees and costs defending itself in the revocation proceeding[]."

[¶7]     Mulligan answered, denying that the Company retained him to represent it in the interwoven lease and liquor license matters, and asserting that the Company retained him only to help negotiate a new lease with the landlord. Mulligan asserted numerous affirmative defenses, including collateral estoppel.

[¶8]     The district court stayed the malpractice proceeding pending the liquor license appeal. In *Mattheis Co.*, we held the revocation court correctly decided the Company committed a gross violation of Title 12, notwithstanding its asserted reliance on counsel's advice, and did not abuse its discretion by revoking the Company's liquor license instead of suspending it. *Mattheis Co.*, ¶ 26, 444 P.3d at 1277–78.

[¶9]     After lifting the stay, the district court granted Mulligan summary judgment based on collateral estoppel. The Company timely appealed.

## STANDARD OF REVIEW

[¶10]   W.R.C.P. 56 governs summary judgment. Succinctly stated,

> We review a district court's order granting summary judgment *de novo* and afford no deference to the district court's ruling. *Thornock v. PacifiCorp*, 2016 WY 93, ¶ 10, 379 P.3d 175, 179 (Wyo. 2016). This Court reviews the same materials and uses the same legal standard as the district court. *Id*. The record is assessed from the vantage point most favorable to the party opposing the motion, and we give a party opposing summary judgment the benefit of all favorable inferences that may fairly be drawn from the record. *Id*. A material fact is one that would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties. *Id*.

*Scranton v. Woodhouse*, 2020 WY 63, ¶ 22, 463 P.3d 785, 790 (Wyo. 2020) (quoting *Estate of Weeks by and through Rehm v. Weeks-Rohner*, 2018 WY 112, ¶ 15, 427 P.3d 729, 734 (Wyo. 2018)). Application of collateral estoppel is also a matter of law we review de novo.

5

*In re Robert & Irene Redland Family Tr., Dated Aug. 10, 1989*, 2019 WY 17, ¶ 15, 435 P.3d 349, 356 (Wyo. 2019) (citing *Ultra Res., Inc. v. Hartman*, 2015 WY 40, ¶ 58, 346 P.3d 880, 900 (Wyo. 2015)).

## *DISCUSSION*

[¶11]  On our de novo review, we conclude both collateral estoppel and the common law *in pari delicto* doctrine bar the Company's legal malpractice action.

[¶12]  Collateral estoppel protects litigants from the burden of relitigating an identical issue—here causation—with the same party or his privy and promotes judicial economy by preventing needless litigation. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979); *see also Loeffel v. Dash*, 2020 WY 96, ¶ 20, 468 P.3d 676, 681 (Wyo. 2020); *Tozzi v. Moffett*, 2018 WY 133, ¶ 17, 430 P.3d 754, 760 (Wyo. 2018); *Hansuld v. Lariat Diesel Corp.*, 2010 WY 160, ¶ 18, 245 P.3d 293, 300 (Wyo. 2010).  The *in pari delicto* doctrine "deter[s] future misconduct by denying relief to one whose losses were substantially caused by his own fraud or illegal conduct." *Gen. Car & Truck Leasing Sys., Inc. v. Lane & Waterman*, 557 N.W.2d 274, 279 (Iowa 1996) (citing *Pantely v. Garris, Garris & Garris, P.C.*, 180 Mich.App. 768, 447 N.W.2d 864, 868 (1989); *McKinley v. Weidner*, 73 Or.App. 396, 698 P.2d 983, 986 (1985)).

### **Collateral Estoppel**

[¶13]  Four elements must be present for collateral estoppel to bar consideration of an issue:

> (1) the issue decided in the prior proceeding must be identical to the issue presented in the present action; (2) the prior proceeding must have resulted in a judgment on the merits; (3) the party against whom collateral estoppel is asserted must have been a party to or in privity with a party to the prior adjudication; and (4) the party against whom collateral estoppel is asserted must have had a "full and fair opportunity to litigate the issue in the prior proceeding."

*Casiano v. State ex rel. Wyoming Dep't of Transportation*, 2019 WY 16, ¶ 10, 434 P.3d 116, 120 (Wyo. 2019) (quoting *Robert L. Kroenlein Trust v. Kirchhefer*, 2015 WY 127, ¶ 40, 357 P.3d 1118, 1134 (Wyo. 2015)).

[¶14]  "In determining whether collateral estoppel applies it is necessary to compare the prior adjudication with the present action." *Phillips v. Toner*, 2006 WY 59, ¶ 8, 133 P.3d 987, 990 (Wyo. 2006); *see also In re Adoption of ADA*, 2006 WY 49, ¶ 12, 132 P.3d 196, 201 (Wyo. 2006) (explaining that the party asserting collateral estoppel applies must

6

analyze the elements by comparing the prior adjudication with the present action); 1A Stuart M. Speiser et al., *The American Law of Torts* § 5:24 (Mar. 2020 Update) ("In applying the doctrine of collateral estoppel, the court must ascertain the issues necessarily decided by the prior judgment and determine which of those issues, if any, are germane to the present litigation."). "[I]ssue preclusion may apply even though the causes of action are substantially different." 50 C.J.S. *Judgments* § 1071 (Dec. 2020 Update) (citation omitted). Thus, that this case involves a legal malpractice cause of action and the prior proceeding involved a liquor license revocation is not dispositive.

[¶15] Mulligan argues collateral estoppel bars the Company from establishing that his advice caused its damages because the revocation court previously found the Company knowingly violated the liquor license statutes and rejected the Company's advice of counsel defense.[2] To support this argument, Mulligan relies on *Worman v. Carver*, 2002 WY 59, 44 P.3d 82 (Wyo. 2002); *Dover v. Baker, Brown, Sharman & Parker*, 859 S.W.2d 441 (1993); and *Butler v. Mooers*, 2001 ME 56, 771 A.2d 1034 (Me. 2001). Mulligan further argues that not applying collateral estoppel may result in inconsistent judgments, and public policy precludes the Company from recovering damages incurred due to its own violation of the law.

[¶16] The Company responds that Mulligan is not entitled to judgment as a matter of law because (1) the "issues" in the malpractice action are different from the "issues" in the revocation proceeding; (2) the revocation court's no advice of counsel ruling, on which it suggests Mulligan's argument hinges, was not necessary or essential to the revocation; (3) even if the no advice of counsel ruling is entitled to preclusive effect it cannot bar the malpractice claim; and (4) the Company did not have a full and fair opportunity to litigate its malpractice claim in the revocation proceeding. There is no dispute that the revocation proceeding resulted in judgment on the merits and the Company was a party to the revocation proceeding, thus satisfying the second and third requirements. *See Casiano*, ¶ 10, 434 P.3d at 120.

[¶17] On the issue of whether the fourth requirement is met, we note that the Company conflates res judicata and collateral estoppel. *See Hansuld*, ¶ 18, 245 P.3d at 300 (explaining that "res judicata applies to whole claims, whether litigated or not, whereas collateral estoppel applies to particular issues that have been contested and resolved"). The relevant question for collateral estoppel purposes is not whether the Company had a full and fair opportunity to litigate its malpractice claim against Mulligan in the revocation proceeding. It is whether the Company had a full and fair opportunity to litigate causation—whether it committed a gross violation by knowingly violating the liquor license statutes.

---

[2] We refer to the revocation court's determination that the Company committed a gross violation by knowingly violating the liquor license statutes as its "gross violation" determination or ruling. We refer to its rejection of the Company's advice of counsel defense as its "no advice of counsel" ruling.

[¶18]   In the revocation proceeding, the Company disputed whether its violation amounted to a "gross violation" warranting revocation instead of suspension. The revocation court held a bench trial, where the Company had the opportunity to present evidence, examine witnesses, and argue its case. We reviewed and affirmed the decision. *Mattheis Co.*, 444 P.3d 1268. The Company thus had a full and fair opportunity to litigate whether it committed a gross violation. *See Slavens v. Bd. of Cty. Comm'rs for Uinta Cty.*, 854 P.2d 683, 686 (Wyo. 1993) (concluding "appellants had a full and fair opportunity to litigate the issues in the prior administrative hearing" where "[t]he hearing was conducted before an independent hearing examiner"; "[a]ll sides were allowed to present evidence, provide opening and closing statements, and to cross-examine witnesses"; and "[t]he hearing examiner's decision was then reviewed by a district court that concluded the findings were proper and affirmed the decision").

[¶19]   In turning our attention then to the dispute whether the first requirement is met, we reject at the outset the Company's contention that the "issues" in the revocation proceeding are different from the "issues" in the malpractice action. This contention is overbroad, as the first collateral estoppel requirement will be met if a dispositive issue in the revocation proceeding is identical to a dispositive issue in the legal malpractice action. *See Parklane*, 439 U.S. at 326, 99 S.Ct. at 649; *Casiano*, ¶ 10, 434 P.3d at 120. The dispositive issue we consider is whether the gross violation determination in the revocation proceeding is the same as the causation determination required in the legal malpractice action. *Worman v. Carver* instructs it is.

[¶20]   In *Worman*, we affirmed the district court's decision that collateral estoppel barred Mr. Worman's claims against his tax preparer Ms. Carver, d/b/a H & R Block, and H & R Block Tax Services, Inc. *Worman*, ¶¶ 1, 16–26, 44 P.3d at 84, 86–88. Mr. Worman and his wife sued their tax preparers for negligence, misrepresentation, and fraud after Mr. Worman was convicted of four counts of willfully submitting a false tax return. *Id.* ¶¶ 7–8, 16, 44 P.3d at 85–86. They alleged that Mr. Worman was convicted of tax fraud due to Ms. Carver's and H & R Block's wrongful actions, resulting in various damages. *Id.* ¶ 8, 44 P.3d at 85.

[¶21]   We determined the intent element of willfulness in the tax fraud proceeding was the same as the causation issue in Mr. Worman's malpractice claim, reasoning that if Mr. Worman did not rely on his tax preparers' advice and services in signing the income tax returns, then he could not establish that the tax preparers caused his damages, thus putting Mr. Worman's state of mind at issue in the malpractice action. *Id.* ¶ 16, 44 P.3d at 86. Mr. Worman's state of mind also was at issue in the criminal action, as the federal jury found him guilty on four counts of willfully submitting a false tax return. *Id.* ¶ 17, 44 P.3d at 86. The federal court instructed the jury that "[t]o act willfully means to act voluntarily and deliberately and intending to violate a known legal duty." *Id.* ¶ 17, 44 P.3d at 87. The jury determined Mr. Worman's actions were willful when it convicted him of tax fraud. *Id.*

[¶22]   We acknowledged that in *Dover v. Baker, Brown, Sharman & Parker*, a Texas Court of Appeals addressed a similar factual situation. *Id.* ¶ 18, 44 P.3d at 87.  After Mr. Dover was convicted of making and subscribing to false tax statements, he sued his attorneys for malpractice, claiming he was convicted because of their misconduct. *Id.* (citing *Dover*, 859 S.W.2d at 444–45).  The trial court granted the attorneys summary judgment because collateral estoppel barred Mr. Dover from claiming he relied on their advice. *Id.* (citing *Dover*, 859 S.W.2d at 447, 449)  In affirming, the Texas Court of Appeals explained that the jury's willfulness finding would be inconsistent with a claim that his attorneys were negligent: "Dover could not have knowingly and wil[l]fully engaged in the underlying transactions and engaged in those transactions in good faith mistaken reliance on [the attorneys'] advice." *Id.* ¶ 19, 44 P.3d at 87 (quoting *Dover*, 859 S.W.2d at 449).

[¶23]   Applying similar reasoning, we concluded that in finding Mr. Worman guilty of willfully signing a false tax return, the federal jury necessarily concluded he did not rely in good faith on the tax preparers' advice and services. *Id.* ¶ 20, 44 P.3d at 87.  Consequently, the tax preparers' conduct, whether negligent or not, could not have caused Mr. Worman to be convicted of tax fraud. *Id.*  Thus, "[t]he issues in the criminal case were identical to those in the civil case." *Id.*  We apply this same reasoning here.

[¶24]   To prevail on its malpractice claim, the Company "must prove: (1) the accepted standard of care in the legal profession; (2) [Mulligan's] conduct departed from that standard; and (3) **[Mulligan's] conduct was the legal cause of the [Company's] injuries**." *Scranton*, ¶ 25, 463 P.3d at 791 (quoting *Tozzi*, ¶ 36, 430 P.3d at 764) (emphasis added); *see also Dockter v. Lozano*, 2020 WY 119, ¶ 9, 472 P.3d 362, 365 (Wyo. 2020).  The Company's alleged injuries—"(a) Loss of its valuable liquor license; (b) Loss of its valuable business at the Tavern; and (c) Substantial attorney's fees and costs in defending itself in the revocation proceeding[]"—all stem from its submission of the renewal application and the resulting revocation of its liquor license.  Thus, similar to *Worman*, the Company must prove it relied on Mulligan's advice in submitting the renewal application; otherwise it cannot establish that Mulligan caused its alleged injuries. *See Worman*, ¶ 16, 44 P.3d at 86.

[¶25]   The revocation court ruled that the Company committed a gross violation of the liquor license statutes by knowingly submitting a false application under penalty of perjury. *Mattheis Co.*, ¶ 19, 444 P.3d at 1276.  The revocation proceeding established the Company

> signed, and Mr. Mulligan notarized, the [renewal] application directly beneath its "Oath or Verification" section, which stated: "*Under penalty of perjury, and the possible revocation or cancellation of the license, I swear the above stated facts, are true and accurate.*" (Emphasis in original.)  Steve and Mike each signed affidavits authorizing the Town to conduct investigations into the truth of the information in the

9

application, both of which stated: "The applicant hereby agrees to comply fully with the rules and regulations of the Town of Jackson governing the license/permit requested." Mr. Mulligan also notarized these documents. The same day, the Company submitted the application to the Town, attaching the one-year lease and the affidavits, among other required documents. It did not submit the modification that shortened the lease term to October 31, 2017.

*Id.* ¶ 7, 444 P.3d at 1271 (footnote omitted). The revocation court found the Company "committed a gross violation by knowingly failing to disclose that it did not have a one-year lease." The "submission of the renewal application representing that there was a one-year lease in place, when in fact there was not, was a flagrant violation of the Wyoming liquor licensing statutes. It was not a careless act or negligent oversight." "Mr. Mattheis [] unequivocally admitted in his testimony that he knew of the one-year license requirement."

[¶26] Our having found no clear error in the revocation court's findings, *see Mattheis Co.*, ¶¶ 18–22, 444 P.3d at 1275–77, the Company could not have relied on Mulligan's legal advice in submitting the renewal application.[3] Consequently, Mulligan's conduct, whether negligent or not, could not have caused the Company's alleged injuries. The issues are identical and collateral estoppel bars the Company's malpractice action.[4]

### *In Pari Delicto*

[¶27] Equally pertinent—and congruent with our further determination that public policy supported dismissal of Mr. Worman's claims, *Worman*, ¶¶ 35–37, 44 P.3d at 90—courts have applied the *in pari delicto* doctrine to bar legal malpractice actions where the plaintiff-client engaged in perjury or similar misconduct.[5] *See, e.g.*, *Gen. Car & Truck*, 557 N.W.2d at 283 (affirming summary judgment in favor of a law firm because "General Car's fraud in obtaining the registration of its service mark and the renewal of its registration [was] misconduct triggering the *in pari delicto* doctrine"); *Evans*, 121 Wis.2d 421, 360 N.W.2d 25 (affirming dismissal of a complaint seeking damages from the client's former lawyers who had advised her to lie under oath in bankruptcy proceeding because the client and

---

[3] The revocation court reached a similar conclusion in rejecting the Company's advice of counsel defense.

[4] The Company's remaining arguments misidentify the germane revocation ruling as the no advice of counsel ruling and thus fail to account for the gross violation determination. *See supra* ¶ 16. Consequently, we do not address them.

[5] In doing so, courts have recognized that "[t]he interest in deterring misconduct by lawyers . . . can be better addressed through grievance procedures designed to deal with the unethical actions of attorneys, rather than by rewarding one of the participants in the misconduct." *Gen. Car & Truck*, 557 N.W.2d at 283 (citations omitted); *see also Pantely*, 180 Mich.App. at 777–78, 447 N.W.2d at 868–69; *Evans v. Cameron*, 121 Wis.2d 421, 428, 360 N.W.2d 25, 29 (Wis. 1985).

lawyer were *in pari delicto*); *Pantely*, 180 Mich.App. 768, 770, 447 N.W.2d 864, 865 (affirming summary judgment in favor of attorneys because, broadly stated, "a client who perjures herself [cannot] recover damages caused by the failed deceit from the lawyer who counselled the lie"); *Whiteheart v. Waller*, 199 N.C.App. 281, 285, 681 S.E.2d 419, 422 (2009) (concluding "[t]he trial court correctly applied collateral estoppel in determining that the [prior] jury verdicts . . . established as a matter of law plaintiff's intentional wrongdoing[]" and "[s]uch a determination [was] fatal to plaintiff's claims under the doctrine of *in pari delicto*"); *Butler*, ¶ 9, 771 A.2d at 1037 (explaining that even assuming "Mooers negligently provided Butler with inaccurate legal advice, Butler's plea of guilty and his acknowledgement that he 'knowingly and willfully' defrauded the banks preclude[d] a finding that his criminal conduct was nonetheless proximately caused by Mooers' negligent legal advice").

[¶28]  There may be "legal matters so complex and ethical dilemmas so profound that a client could follow an attorney's advice, do wrong and still maintain suit on the basis of not being equally at fault." *Pantely*, 180 Mich.App. at 776, 447 N.W.2d at 868; *see also Evans*, 121 Wis.2d at 428, 360 N.W.2d at 28–29.  However, this case is not so complex because "perjury is not complex; and telling the truth poses no dilemma." *Pantely*, 180 Mich.App. at 776, 447 N.W.2d at 868.  "The wrongfulness of lying while under oath . . . is apparent." *Id.* (quoting *Evans*, 121 Wis.2d at 428, 360 N.W.2d at 29).  Thus "[a]bsent some allegation of special circumstances constituting an exception to the rule of *in pari delicto* independent of the attorney-client relationship, the client's deliberate act of lying under oath places that client *in pari delicto* with the attorney who advised that client to lie." *Id.* (quoting *Evans*, 121 Wis.2d at 428, 360 N.W.2d at 29); *see also Gen. Car & Truck*, 557 N.W.2d at 282.

[¶29]  Accordingly, even if we assume all the Company's allegations about Mulligan's conduct are true,[6] we should afford the Company no relief because its losses were substantially caused by its own wrongful conduct. *See Gen. Car & Truck*, 557 N.W.2d at 279.  Its injuries stem from its act of knowingly submitting a false liquor license renewal application under penalty of perjury.  No exception to the *in pari delicto* doctrine can apply because "perjury is not complex; and telling the truth poses no dilemma." *See Pantely*, 180 Mich.App. at 776, 447 N.W.2d at 868.  The wrongfulness of lying under penalty of

---

[6] In its complaint, the Company alleges Mulligan did not disclose that the Company's landlord was willing to mediate the lease dispute.  Then Mulligan helped devise a plan to resolve the lease dispute and the liquor license renewal.  The plan involved creating two documents: a one-year lease for the Tavern's current space and a lease modification to terminate the lease October 31, 2017.  Mulligan reviewed each document, emailed them to Steve and Mike, edited the documents, and approved final drafts.  Mulligan expressly advised Steve and Mike to sign the documents and they did.  After all parties signed the lease modification, they signed the application to transfer the liquor license back to the Tavern.  Mulligan notarized the signatures, attached the one-year lease but not the modification, handed it to the brothers, and said "you're good to go."  Then, according to the Company, Mulligan falsely testified about the extent of his representation during the revocation proceeding.

11

perjury on a liquor license renewal application is apparent. *See id.* The Company's knowing act of lying on the renewal application places the Company *in pari delicto* with Mulligan. *See id.*

## CONCLUSION

[¶30] Collateral estoppel and *in pari delicto* bar the Company's legal malpractice claim. We affirm.